CUTAIAR, Richard, Lemon, William, Dagen, Vincent, Schurr, Maurice, and Gormley, William, as Trustees of the Teamsters Health and Welfare Fund of Philadelphia and Vicinity and as Trustees of the Teamsters Pension Trust Fund of Philadelphia and Vicinity

**and**

Schaffer, Jr., Charles J., Administrator of the Teamsters Health and Welfare Fund of Philadelphia and Vicinity and as Administrator of the Teamsters Pension Trust Fund of Philadelphia and Vicinity

**and**

Teamsters Pension Trust Fund of Philadelphia and Vicinity

**and**

Teamsters Health and Welfare Fund of Philadelphia and Vicinity

v.

MARSHALL, F. Ray, Secretary of Labor, Appellant.

No. 78–1380.

United States Court of Appeals, Third Circuit.

Argued Nov. 17, 1978.

Decided Jan. 12, 1979.

Carin Ann Clauss, Sol. of Labor, Monica Gallagher, Associate Sol., Plan Benefits Security Div., Norman P. Goldberg, Counsel for Litigation, Judith Burghardt, Atty., U. S. Dept. of Labor, Washington, D. C., for the Secretary of Labor, appellant.

James J. Leyden, James D. Crawford, Nicholas N. Price, Edward Davis, James McG. Mallie, Philadelphia, Pa., for appellees; Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.

Before ALDISERT and HUNTER, Circuit Judges, and GERRY, District Judge.*

### OPINION OF THE COURT

ALDISERT, Circuit Judge.

The Secretary of Labor, responsible for enforcement of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.,* issued an opinion letter stating that certain transactions by the trustees of two union employee benefit plans were in violation of the Act. The trustees sought, and the district court granted, a declaratory judgment that the Secretary's letter was "null and void." This appeal requires us to decide whether the trustees' complaint presented a justiciable controversy, and, if so, whether there was a violation of ERISA. Because we find no jurisdictional defect, and because the trustees violated the Act, we reverse.

### I.

In 1951, the Teamsters Health and Welfare Fund of Philadelphia and Vicinity (welfare fund) was created to provide medical, hospital, disability, life insurance and other welfare benefits to members of a number of Teamster local unions in Eastern Pennsylvania. In 1957, the Teamsters Pension Trust Fund of Philadelphia and Vicinity (pension fund) was created to provide retirement income to members of the same union locals. Both employee benefit plans were established and administered pursuant to the terms of the Labor Management Relations Act of 1947, 29 U.S.C. § 141 *et seq.* (Taft-Hartley Act). The obvious parallelism of the plans and the large overlap in the identity of participants, union locals and employers who were parties to the plans made it feasible to administer them jointly. Each of the multi-employer plans had an administrator and a board composed of three union-designated trustees and three employer-designated trustees; these seven individuals were the same for both plans.

In 1974, due to decreased employer contributions, rising medical costs and increased utilization, the welfare fund developed a serious cash flow problem. By mid-1975, it became clear that the fund would have to borrow $4 million to pay currently accumulated benefit claims, and the trustees voted unanimously to do so on the recommendation of the administrator. By contrast to the welfare fund, the pension fund had ample liquid assets. It appeared possible to benefit both funds by transferring the money from one to the other; the pension fund, as lender, might receive a higher rate of interest than was commercially available while the welfare fund, as borrower, might pay less interest than would be required commercially. On a motion to lend the $4 million to the welfare fund, the pension fund trustees deadlocked, three of them expressing concern as to their fiduciary responsibility in authorizing the transactions, and the issue was referred to an impartial umpire under § 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The umpire was asked to decide the legality of the loan under ERISA.

The umpire issued an award holding that the trustees' deadlock presented an arbitrable dispute under § 302(c)(5), that ERISA did "not countermand or modify the impact" of the Taft-Hartley Act in this respect, and that nothing in ERISA prohibited the pension fund from making the disputed loan to the welfare fund. Although the umpire did not direct the trustees to enter into the proposed transaction, the decision satisfied the concerns of the trustees and the loan was consummated.

A subsequent investigation by the Department of Labor led to the conclusion that the loan violated ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2):

(b) A fiduciary with respect to a plan shall not—

.    .    .    .    .

---

* Honorable John F. Gerry, of the United States District Court for the District of New Jersey, sitting by designation.

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. . . .

On August 3, 1977, the Deputy Administrator for Pension and Welfare Benefit Programs, United States Department of Labor, wrote to the trustees to inform them of the violation. Among other things, the letter stated that

while you were fiduciaries with respect to the Pension Trust, you acted in a "transaction involving the plan on behalf of a party (the Welfare Trust) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." . . . Also, you should be aware that if the Pension Trust suffers any losses because of this transaction, you may be held personally liable therefor under § 409. For your future guidance, please be advised that we are of the view that any sale or loan between the two plans as presently administered is violative of § 406, and exemptions under § 408 of the ERISA should be sought with regard thereto.

Appendix at 62–63. The issuance of this letter allegedly made it difficult for the trustees to obtain fiduciary liability insurance. They filed suit in federal district court seeking a declaratory judgment that the letter was null and void because the Secretary exceeded his authority under ERISA and erroneously determined that the trustees violated the Act.

The Secretary has appealed from the order of the district court which granted the requested relief. We are asked to examine various provisions of the Taft-Hartley Act and the interaction of the subsequently enacted ERISA provisions relating to the administration of employee benefit plans. Preliminarily, however, we must address a challenge to the jurisdiction of the court based on the assertion that the trustees' complaint did not present a justiciable controversy under Article III of the Constitution.

## II.

The Secretary's jurisdictional challenge is predicated on the notion that the trustees "hinged their suit for declaratory relief on the allegation that the Secretary's letter of August 3, 1977 had created a 'serious doubt' that the plaintiff Trustees would be able to secure fiduciary insurance." Brief for Appellant at 18. Appellant asserts that without the alleged adverse impact on their ability to obtain insurance, the trustees would lack standing to litigate the Secretary's interpretation of ERISA, and that the Secretary's decision not to impose sanctions for the violation precludes a finding of justiciability. *Id.* at 18–19. Appellant alleges that proof of adverse impact on the trustees fell far short of the allegations in the complaint.

The trustees, on the other hand, argue that the district court's factual finding that the Secretary's letter had a "negative effect" on their ability to obtain insurance was not clearly erroneous, that the effect was sufficient to establish the immediacy, reality and adversity of an "actual controversy." Appellees also argue their standing "to challenge the Secretary's ruling wholly irrespective of the effect that the . . . letter may have had on their ability to obtain new insurance," Brief for Appellees at 10, because their complaint sought judicial review of final agency action pursuant to §§ 502(k) and 507(a) of ERISA, 29 U.S.C. §§ 1132(k) and 1137(a). This raises the fundamental inconsistency of appellant's position: the Secretary asserts his authority to investigate employee benefit plans and to interpret and enforce the provisions of ERISA, yet his final action in declaring a statutory violation pursuant to that authority is not subject to judicial review because it is so meaningless as to fail to create an actual controversy.

## A.

The trustees' complaint alleged jurisdiction under 29 U.S.C. § 1132(k), which provides as follows:

Suits by an administrator, fiduciary, participant, or beneficiary of an employee benefit plan to review a final order of the Secretary, to restrain the Secretary from taking any action contrary to the provisions of this Act, or to compel him to take action required under this subchapter, may be brought in the district court . . .,

and under 5 U.S.C. § 704, made applicable by 29 U.S.C. § 1137(a). Title 5 U.S.C. § 704 provides:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

■ Although jurisdiction was invoked under ERISA and the Administrative Procedure Act, the trustees sought only declaratory relief. Title 28 U.S.C. § 2201 allows a federal court to grant a declaratory judgment in "a case of actual controversy." The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions. Thus the Supreme Court has held that there must be a "live dispute" between the parties, *Powell v. McCormack,* 395 U.S. 486, 517–18, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and that there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Zwickler v. Koota,* 389 U.S. 241, 244 n. 3, 88 S.Ct. 391, 393, 19 L.Ed.2d 444 (1967). The Court has also held that the Declaratory Judgment Act require-

ment of an "actual controversy" is identical to the constitutional requirement of "cases" and "controversies." *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

### B.

■ We think jurisdiction was properly exercised under 29 U.S.C. § 1132(k) and 5 U.S.C. § 704. Appellant has stipulated that the contested letter "was final and that there was no administrative appeal procedure." Appendix at 101. Unless the issuance of the letter was a nullity, or unless the Secretary was without statutory authority to investigate the trustees' action and to determine its legality under ERISA, then we fail to understand how the Secretary can challenge the court's jurisdiction to review the agency's action pursuant to 5 U.S.C. § 704.

Furthermore, the trustees established by affidavit that a carrier of fiduciary liability insurance rejected the trustees' application "because of the Department of Labor's finding, set forth in a letter dated August 3, 1977, that the trustees of the Trusts have engaged in a prohibited transaction and the possibility of a future suit or suits which Aetna would have to defend." Appendix at 92. Based on that evidence, the court found as a fact that the letter had a "negative effect" on the trustees' ability to obtain insurance, *id.* at 302. We do not consider that finding to be clearly erroneous, and we think that such a negative effect creates sufficient immediacy and adversity to present the court with an "actual controversy."

We find readily distinguishable the cases presented by appellant to attack the justiciability of this controversy and the trustees' standing to challenge the Secretary's interpretation of ERISA. The cases relied on concern the circumstances under which a party may challenge governmental action of general applicability, rather than action aimed specifically at the party making the challenge. None of the cases cited by appellant involved a situation comparable to what exists here—a final ruling by an ad-

ministrative agency declaring unlawful specific conduct by specific individuals, and an attempt by those individuals to obtain judicial relief to clear their names.

The Secretary's enforcement responsibilities with respect to ERISA, the exhaustion of agency review, and the direct impact of the Secretary's action on the trustees were sufficient to establish justiciability and to vest jurisdiction in the district court to grant or deny declaratory relief.

## III.

Our review of the merits raises questions of the interaction of various provisions of the Taft-Hartley Act and ERISA. Simply put, the trustees urge that no violation of ERISA occurred because the two funds were not adverse within the meaning of the Act, and that even if a violation occurred, good faith reliance on the umpire's award is a valid defense. The Secretary's conclusion that a violation did occur was based on his interpretation that § 406(b)(2) creates a per se proscription of the type of transaction in question, and that a Taft-Hartley umpire cannot possibly adjudicate the legality of a transaction under ERISA. The Secretary's position is that a borrower and a lender in the same transaction are always "adverse" within the meaning of § 406(b)(2). Brief for Appellant at 27.

### A.

It is important to understand that this case involves no taint of scandal, no hint of self-dealing, no trace of bad faith. The violation was concededly a technical one, the result of a misunderstanding of the requirements of the newly enacted ERISA bolstered by the result of good faith submission of the dispute to impartial arbitration. Uncontradicted testimony before the district court established that the terms of the transaction were fair and reasonable with respect to both plans.

The pension and welfare plans, from their inception, had been subject to the rigid structural requirements of the Taft-Hartley Act. A central section of the Act, § 302(c)(5), 29 U.S.C. § 186(c)(5), requires that employee benefit plans to which employers contribute must have an equal number of employer and employee representatives, and if the two groups cannot agree on the administration of the fund, they must choose an impartial umpire to decide the dispute.[1] It was under this provision that

---

1. 29 U.S.C. § 186(c)(5) provides:

(c) The [restrictions] of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; . . .

the trustees of the pension plan submitted the propriety of the loan transaction to the umpire. The umpire, as we have noted, decided that the proposed loan would not violate the Taft-Hartley Act or ERISA.

The Department of Labor, exercising its investigatory and enforcement responsibilities under ERISA, examined the loan and determined that the pension trustees acted on behalf of a party, the welfare plan, whose interests were adverse to interests of the pension plan, thus violating § 406(b)(2). The Secretary's reasoning relies on the fact that the participants and beneficiaries in the two plans are not co-extensive, though it is undisputed that a great many employees participate in both plans and that most participants in the welfare plan are future participants in the pension plan and thus have a strong interest in the strength of the fund. Also critical to the Secretary's conclusion is the conception that a borrower and a lender in the same transaction always have interests which are legally opposed.

### B.

■ With this framework, the issues are resolved by a simple exercise in statutory construction. Does § 406(b)(2) prohibit transactions "adverse" in the technical sense asserted by the Secretary, or must a transaction exhibit fiduciary misconduct, reflecting harm to the beneficiaries, before the statute is violated? We endorse without reservation the interpretation of the Secretary. When identical trustees of two employee benefit plans whose participants and beneficiaries are not identical effect a loan between the plans without a § 408 exemption, a per se violation of ERISA exists.

ERISA went into effect on September 2, 1974. To ascertain legislative concerns and policies, it is not necessary to delve deeply into committee hearings and reports. In the first section of the Act, Congress stated its findings and policy:

(a) The Congress finds that the growth in size, scope, and numbers of employee

benefit plans in recent years has been rapid and substantial; . . . that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; . . . that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

(b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001. We note the national public interest in safeguarding anticipated employee benefits by establishing *minimum* standards to protect employee benefit plans. The substantial growth of plans affecting the security of millions of employees and their dependents, as well as the limited resources of the Department of Labor in the enforcement of ERISA, leads us to believe that Congress intended to create an easily applied per se prohibition of the type of transaction in question.

We do not regard this as a harsh rule. Section 408(a), 29 U.S.C. § 1108(a), allows

the Secretary to grant exemptions to fiduciaries from the restrictions of § 406. Section 408(a) requires publication in the Federal Register and explicitly provides:

The Secretary may not grant an exemption under this subsection unless he finds that such exemption is—

    (1) administratively feasible,

    (2) in the interests of the plan and of its participants and beneficiaries, and

    (3) protective of the rights of participants and beneficiaries of such plan.

.    .    .    .    .

The Secretary may not grant an exemption . . . from section 1106(b) of this title unless he affords an opportunity for a hearing and makes a determination on the record with respect to the findings required by paragraphs (1), (2), and (3) of this subsection.

That such extensive publication and hearing procedures were established by Congress before exemption may be authorized indicates an intent to create, in § 406(b), a blanket prohibition of certain transactions, no matter how fair, unless the statutory exemption procedures are followed.

We have no doubt that the pension fund's loan to the welfare fund falls within the prohibition of § 406(b)(2). Fiduciaries acting on both sides of a loan transaction cannot negotiate the *best* terms for either plan. By balancing the interests of each plan, they may be able to construct terms which are fair and equitable for both plans; if so, they may qualify for a § 408 exemption. But without the formal procedures required under § 408, each plan deserves more than a balancing of interests. Each plan must be represented by trustees who are free to exert the maximum economic power manifested by their fund whenever they are negotiating a commercial transaction. Section 406(b)(2) speaks of "the interests of the plan or the interests of its participants or beneficiaries." It does not speak of "some" or "many" or "most" of the participants. If there is a single member who participates in only one of the plans, his plan must be administered without regard for the interests of any other plan.

## C.

The conflict between the Taft-Hartley Act and ERISA is more apparent than real. Although the former Act established certain structural and procedural requirements for employee benefit plans in 1947, ERISA created numerous higher standards for the administration of such plans. The new standards are incontestably applicable to plans formerly governed only by the Taft-Hartley Act.

■ It is commonplace that new statutes create new requirements and prohibitions where none existed before. It is axiomatic that provisions in different statutes should, if possible, be interpreted so as to effectuate both provisions. The Taft-Hartley umpire provision was created to break deadlocks between employer and employee groups "[on] the administration of such fund," not to insulate trustees from the effects of their illegal acts. Surely if the employer and employee trustees deadlocked over a motion to embezzle the fund, submission of the dispute to an umpire would have no legal effect. Section 302(c)(5) of the Taft-Hartley Act contemplates the resolution of deadlocks over two *permissible* administrative courses of action. Because the transaction in question was prohibited by statute in 1974, a Taft-Hartley umpire had no power to approve it in 1975.

The umpire's award is not before us. That the Secretary's action is inconsistent with the award is beyond the scope of our review. We simply approve the action of the Secretary and endorse his interpretation of § 406(b)(2) of ERISA.

## D.

We need not address the contention of the trustees that their good faith, as evidenced by their submission of their dispute to an umpire, should constitute a defense in an action against them as individuals for engaging in a prohibited transaction to the detriment of the fund. The record reflects that *this* transaction did not harm the fund. The Secretary contemplates no action

against the trustees. Appendix at 62. Therefore, no issue relating to the liability of the trustees is before us for review.

### IV.

We hold that the final action of the Secretary in issuing a letter specifying a violation of ERISA by the trustees of an employee benefit plan is reviewable under the Administrative Procedure Act and presents a case or controversy under the Constitution. We endorse the Secretary's interpretation of § 406(b)(2) and hold that it creates a per se prohibition of a transfer between two funds where the trustees are identical but the participants and beneficiaries are not.

The district court's order declaring the Secretary's letter to be null and void will be reversed and the proceedings remanded with a direction to enter judgment in favor of the Secretary of Labor.