Thomas S. DODGE, Plaintiff,

v.

SUSQUEHANNA UNIVERSITY,
Defendant.

No. CV–90–2008.

United States District Court,
M.D. Pennsylvania.

June 2, 1992.

---

Charles R. Gerow, Mechanicsburg, Pa., Robert E. Kelly, Jr., Cletus C. Hess, Duane, Morris & Heckscher, Harrisburg, Pa., for plaintiff.

Elizabeth M. Stanton, Moots, Cope & Stanton, Columbus, Ohio, John A. Carpenter, Carpenter, Diehl, Kivko & Wilkison, Sunbury, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff Thomas S. Dodge alleged in this

ADEA action[1] that he was discharged from his employment as business manager at Susquehanna University ("the University") because of his age. 29 U.S.C. § 623(a)(1). Dodge left the University's employ on November 19, 1989. His departure was preceded by a discussion which took place on November 16, 1989, between Dodge and his supervisor, Donald Aungst, about perceived short-comings in his performance and the need for improvement. Plaintiff alleged that Dodge's purported shortcomings are a pretext for discriminatory motives and sought compensatory and liquidated damages pursuant to 29 U.S.C. § 626(b).

In its defense, the University asserted that: (1) Dodge was not discharged but retired of his own volition; (2) Dodge failed to establish a *prima facie* case of discrimination; (3) Dodge produced no direct evidence of discrimination; and (4) it had legitimate, non-discriminatory reasons for its conduct. In an order and memorandum dated March 13, 1992, 785 F.Supp. 502, the court entered summary judgment in defendant's favor.

Plaintiff now seeks reconsideration of that order on three grounds. In his motion for reconsideration (Record Document No. 41, filed March 23, 1991), plaintiff argues that the court erred in: (1) overlooking his breach of contract claim; (2) applying a standard for the review of summary judgment motions in ADEA cases that the Third Circuit has not adopted; and (3) ruling on the motion at a time when plaintiff had not yet completed discovery. For the reasons stated below, we will grant reconsideration, but deny the request to alter or amend the prior order granting summary judgment in defendant's favor and closing the case.

*Standards for motion to alter or amend*

A Rule 59(e) motion to alter or amend a judgment must rely on at least one of three grounds: (1) intervening change in controlling law; (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent mani-

fest injustice. *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990) and *Natural Resources Defense Counsel, Inc. v. U.S. E.P.A.,* 705 F.Supp. 698, 702 (D.D.C.), *vacated on other grounds,* 707 F.Supp. 3 (1989). "With regard to the third ground, the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins, supra,* 130 F.R.D. at 626. Moreover, a Rule 59(e) motion is not to be used as a means "to reargue matters already argued and disposed of" by prior rulings "or to put forward additional arguments which it could have made neglected to make before judgment." *Davis v. Lukhard,* 106 F.R.D. 317, 318 (E.D.Va.1984), *judgment vacated on other grounds,* 788 F.2d 973 (4th Cir.1986).

*Plaintiff's motion to amend*

We discussed the law and the reasons for the ruling granting summary judgment in defendant's favor in the prior memorandum dated March 13, 1992 and will not repeat them here unnecessarily. Plaintiff's arguments on the ADEA raise few issues not previously addressed by the court, and we will address here only those which warrant further comment.

*Breach of contract*

█ In his motion for reconsideration, plaintiff argues that the court should not have directed entry of summary judgment in defendant's favor, because plaintiff's breach of contract claim remains. Plaintiff argues that paragraphs five through eight of his complaint allege a claim for breach of contract. They state:

5. On or about May 24, 1989, Plaintiff and Defendant entered into an employment contract, with an effective date of September 1, 1989, for the term of one year. A true and correct copy of Defendants [sic] memorandum to Plaintiff is attached hereto as Exhibit "A". The final signed document is in the sole and exclusive possession of Defendant.

---

1. The Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1988) ("ADEA").

6. Under the terms of said contract, Defendant was to pay Plaintiff $32,200 per annum.

7. Under the terms of said contract, Defendant was to contribute $2,576 per annum to Plaintiff's retirement annuity.

8. Defendant has breached its duties under the aforesaid contract in that it ceased to compensate and otherwise terminated Plaintiff's employment on or about February 22, 1990.

(Plaintiff's complaint, filed November 16, 1990, paras. 5–8). In paragraph nine, plaintiff launches into allegations that his employment was terminated for discriminatory reasons. In paragraph twelve, plaintiff reverts back to allegations relating to his employment contract. It states:

Plaintiff has demanded that Defendant pay all sums properly due Plaintiff and has demanded of Defendant the right to employment under the terms of said contract, but Defendant has in all manner refused to pay the same or any part thereof or to otherwise employ Plaintiff.

(Plaintiff's complaint, filed November 16, 1990, para. 12). The allegations relating to the contract are not set forth in a separate count but are simply intermingled with allegations of age discrimination. In the ad damnum clause, plaintiff requests damages consisting of:

all sums due Plaintiff under the terms of their employment contract, together will [sic] all sums that would have been due Plaintiff had Plaintiff continued to be employed by Defendant to age 65 ... together with interest ... costs of this suit, counsel fees, expenses and all other legal and equitable relief which this Honorable Court may deem proper, especially punitive damages.

(Plaintiff's complaint, filed November 16, 1990, p. 3)

Plaintiff's complaint does not conform to the Federal Rules of Civil Procedure. Rule 10(b) provides that:

.... Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth.

Fed.R.Civ.P. 10(b). Not only did plaintiff fail to set forth the breach of contract claim as a separate count, he states in the paragraph immediately preceding paragraph 5 that the action is filed under the ADEA, 29 U.S.C. §§ 621–34, giving the impression that this is the sole basis for his action.

Defendant was apparently litigating this case under the assumption that no separate claim for breach of contract had been pled. Its motion for summary judgment on the ADEA claim was not captioned "motion for partial summary judgment" as would have been the case had it thought that there was an additional claim. Instead of correcting this matter when it first arose, plaintiff waited until the court had ruled on the motion for summary judgment to set the record straight.

Although plaintiff's lack of vigilance and failure to follow Rule 10 caused the confusion, it is not the type of error which warrants a sanction as harsh as denying plaintiff relief on that claim. At the same time, it would also be inappropriate for this court to retain jurisdiction over the breach of contract claim, the only federal claim having been dismissed and there being no basis for diversity jurisdiction.[2] 28 U.S.C. § 1332. We will, therefore, amend the order of March 13, 1992 to provide that plaintiff's claim for breach of contract be dismissed without prejudice. This gives plaintiff the opportunity to file a breach of contract action in state court.[3]

*Summary judgment in discrimination actions*

■ Plaintiff argues that the court erred in relying on a First Circuit decision, *Mesnick v. General Electric Co.*, 950 F.2d 816, 820–26 (1st Cir.1991), *cert. denied,* —— U.S.

---

**2.** Both parties reside in Pennsylvania, and the amount in controversy under the breach of contract claim is less than $50,000.00.

**3.** This case is governed by Pennsylvania law, and the statute of limitations on a claim based on a written contract is four years. 42 Pa.C.S.A. § 5525(8) (Supp.1991). Plaintiff is still within the four-year period.

——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992), which plaintiff contends applied a more stringent standard of proof to ADEA plaintiffs than the Third Circuit demands. Plaintiff argues that *Mesnick, supra* is inconsistent with Third Circuit precedent in requiring an ADEA plaintiff to produce evidence of a discriminatory animus and in holding that circumstantial evidence which tends to discredit the reasons offered by the employer is, by itself, insufficient.

The court's holding is not inconsistent with Third Circuit precedent. Contrary to plaintiff's assertion, the record contains no evidence which raises a genuine issue of material fact as to the legitimacy of the reasons stated by the University for the events which culminated in Dodge leaving its employ. Although we could have stated this more clearly in the prior opinion, it was implicit in our discussion of the lack of proof.

To allay any confusion on the basis for the court's ruling, we will briefly restate and amplify, where necessary, the basis for our ruling.

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987) is the seminal Third Circuit decision on an ADEA plaintiff's burden if the employer has offered "legitimate reasons" for the dismissal. In it, the Third Circuit stated:

> ... [O]nce the defendant has 'produce[d] admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus,' the presumption [of discrimination] drops from the case and plaintiff's ultimate burden of persuasion includes the requirement to show that the defendant's proffered reason is a pretext for discrimination, i.e., that the proffered reason is merely a fabricated justification for discriminatory conduct. *Burdine* [4]....
> The plaintiff may meet this burden 'either directly by persuading the court that a discriminatory reason more likely

motivated the employer **or indirectly by showing that the employer's proffered explanation is unworthy of credence.'**....

.... [A] plaintiff can prevail by means of indirect proof that the employer's reasons are pretextual without presenting evidence specifically relating to age.
The plaintiff may satisfy his burden of demonstrating that his age was a determinative factor in his discharge 'by producing either direct evidence of discriminatory intent or evidence from which an inference of discrimination can be drawn.'

....

> The plaintiff's burden to prove discrimination may be met at trial in alternate ways. Therefore, to meet its burden on summary judgment, the defendant employer must show that the plaintiff will be unable to introduce either direct evidence of a purpose to discriminate, or indirect evidence of that purpose by showing that the proffered reason is subject to factual dispute.

....

> A defendant which is less than honest in proffering its reason for discharge risks an unnecessary age discrimination verdict.... [T]he *McDonnell Douglas* [5] test is based on the Supreme Court's assumption that 'when all legitimate reasons for rejecting an application have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer ... based his decision on an impermissible consideration such as [age].' ...

*Chipollini, supra*, 814 F.2d at 898–99 (Citations omitted and emphasis in original.). Accord: *Sorba v. Pennsylvania Drilling Co., Inc.*, 821 F.2d 200, 205 (3d Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988) ("[T]he issue on summary judgment is whether ... [the plaintiff] has pointed to evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge which

---

4. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

5. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*could* support an inference that the employer did not act for nondiscriminatory reasons.... To defeat a summary judgment motion based only on a defendant's proffer of a nondiscriminatory animus, a plaintiff who has made a *prima facie* showing of discrimination, need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." Emphasis in original and footnote omitted.)

In *Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 127–28 (3d Cir.1990), the Third Circuit cautioned:

> *Chipollini* and *Sorba* must not be read to mean that a plaintiff in a discrimination action always survives summary judgment when the plaintiff calls the defendant's proffered explanation into question, however. 'To create a factual dispute as to pretext, [the plaintiff] must not only introduce evidence from which a reasonable person could infer that he is qualified; he also must introduce evidence that casts doubt on [the defendant's] contention that there was a legitimate business justification for [defendant's action].'.... Thus, the *McDonnell Douglas* presumptions entitle a member of a suspect class to the benefit of the doubt initially, but once the defendant has given a non-discriminatory reason for its actions, the plaintiff seeking to defeat a summary judgment motion must produce or point to some evidence, in addition to the basic facts necessary to establish the prima facie case, indicating that the defendant's reason is pretextual.
>
> In sum, the plaintiff cannot rely solely on a potential finding that the defendant's explanation is implausible. The fact that a judge or jury might disbelieve the defendant's asserted nondiscriminatory reason is not enough, by itself, to preclude summary judgment. Rather, the plaintiff must be able to adduce evidence, whether direct or circumstantial, from which a reasonable jury could conclude that the defendant's explanation is incredible....

We start with the evidence which plaintiff placed before the court and argued in opposition to defendant's summary judgment motion.

Plaintiff devoted one sentence in his opposing brief (Record Document No. 27, filed March 2, 1992) to the evidence available to rebut the reasons given by the University for his departure. Plaintiff wrote:

> In any event, a plethora of evidence exists to rebut Defendant's position that they had legitimate reason for discharging Plaintiff, including their own writings and testimony, and the testimony of University personnel, faculty, staff, students, parents, and alumni.

Nowhere in documents presented to the court prior to its decision did plaintiff amplify what was meant by this statement. The court had nothing before it other than a bald, unsupported statement that evidence existed. This is the antithesis of what the Supreme Court requires of a plaintiff seeking to defeat a motion for summary judgment. As the trilogy of *Celotex vs. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986) established, to survive a motion for summary judgment, a plaintiff must do more than restate the allegations of the complaint. He must offer specific evidence supporting all essential elements of his case. See: William Schwarzer, Alan Hirsch, and David J. Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 487 (1991). Absent such evidence, the defendant prevails.

Plaintiff did none of this and now seeks to rectify his omissions via a motion for reconsideration. Plaintiff urges the court to consider evidence not cited or pointed out to the court in opposition to defendant's motion, even though available to him at the time.

While we should not, under the strict interpretation of Rule 59(e), even consider

such evidence,[6] we will address it briefly. The evidence now cited still fails to call into question the legitimacy of the reasons offered by the University for Dodge's departure, even when plaintiff is given the benefit of all reasonable inferences. We start with plaintiff's argument that the University has failed to offer a valid reason, because it has offered only general criticism of Dodge's job performance and supplied no specifics. We disagree. The University has offered clear evidence that plaintiff's supervisor, Donald B. Aungst, was dissatisfied with his performance, had been so for some time, and communicated to plaintiff as early as six months before his departure specific reasons for his dissatisfaction. In plaintiff's last job evaluation, dated May 10, 1989, Aungst states: "If Tom continues to have conflicts with members of the Financial Aid Office we will have to reconsider Tom's continued employment at Susquehanna." Plaintiff was aware of this evaluation and signed the form on which this statement appears on May 10, 1989.

The May, 1989 evaluation is also peppered with other specific criticisms of Dodge's performance. It states, *inter alia*, that Dodge: (1) "need[s] to develop new and better billing practice"; (2) "needs to improve in personnel"; (3) "need[s] to keep me better informed in changes in procedures in general services"; (4) "need[s] to be more innovative in improving practices and procedures". Under the category "weak points", the evaluation states: "ability to consistently get along with others", and Aungst goes on to comment: "We cannot tolerate the type of conflicts between Tom and the Financial Aid Office in the future. Tom has failed to improve relations [with] financial aid and I agree financial aid should be willing to listen to Tom's suggestions for improvement." In fairness the evaluation does contain other positive statements about Dodge's performance in addition to the last sentence of

the last quote. The fact that he also had good points does not disprove that he also had weaknesses in job performance which his employer decided could no longer be tolerated. Cf. *Sorba, supra,* 821 F.2d at 205 (Plaintiff proffered evidence "to dispute the fact that his supervisors were not satisfied with his work." While he did not dispute that "there were poor results on his last three jobs", he "proffered evidence ... that his supervisors realized that the poor results were not his fault." Further, testimony of the employer's witnesses "was inconsistent regarding whether they believed ... [plaintiff's] performance caused the unsatisfactory job results.")

In his brief supporting the motion for reconsideration (Record Document No. 43, filed March 26, 1992), plaintiff states that there is evidence which shows that the reason given by the University is pretextual, but again offers few specifics. Further, the evidence which plaintiff does offer does not tend to disprove the reasons stated by the University. Plaintiff states that: (1) defendant's contention that Dodge did not get along well with his colleagues is undermined by Aungst's testimony at the unemployment compensation hearing,[7] in which Aungst admitted that there were, at most, four individuals on the University staff with whom Dodge did not get along, that he had on occasion complimented Dodge on the way he handled the personnel in his office; and that he had never received a complaint about the way Dodge interacted with parents; (2) Dodge's conflicts with the Financial Aid Office staff were not his fault alone; (3) Dodge returned to work following his surgery two weeks ahead of the date his doctor said he should return; (4) Dodge did not leave work early and was active in extracurricular activities for which he was not compensated by the University; (5) not all of the personnel in Dodge's department were computer liter-

---

6. See: *Davis, supra,* 106 F.R.D. at 318 (The purpose of a motion for reconsideration is *not* to give the losing party a second change to argue his case.).

7. Testimony given at Dodge's unemployment compensation hearing was not cited in opposi-

tion to defendant's summary judgment motion, and transcripts of those proceedings were not filed with the court until plaintiff attached them to his brief supporting the motion for reconsideration.

ate, as the University wanted Dodge to be; and (6) the University's receivables did not improve after Dodge left its employ. (Record Document No. 43, filed March 26, 1992, pp. 24–28) Dodge also points out that Aungst testified in the Unemployment Compensation hearing that he was "pleased that Tom came back to work and handled his responsibilities." (Record Document No. 43, filed March 26, 1992, Exhibit "L", p. 39)

None of the evidence plaintiff cites tends to disprove the reasons given by the University for its dissatisfaction with his performance. Point by point, the reason for this is: (1) the fact that Dodge did not get along with only four people is irrelevant since those four people were in the Financial Aid Office, an office with which it was important that he work harmoniously (Plaintiff was the Business Manager of the University and was responsible for, *inter alia,* accounts receivable)—the fact that Dodge may have gotten along well with others on the University staff and that Aungst did not receive complaints about him from parents does not prove that he got along well with the Financial Aid Office staff; (2) the fact that the Financial Aid Office staff could be faulted as well for the disharmony does not disprove that it was at least partially Dodge's fault; (3) the fact that Dodge returned to work soon after undergoing surgery in the Fall of 1989 is not relevant to any of the material facts at issue; (4) the fact that Dodge did not leave work early and was active in extracurricular activities is also immaterial—The University has never stated that his departure was caused by failing to work the requisite hours or by failing to engage in extracurricular activities; (5) the same is true of the University's complaint about his failure to become computer literate—The fact that it did not expect the same of others in Dodge's department is irrelevant. He was the supervisor and it was certainly legitimate to expect him to learn computer skills to be effective or efficient in planning for the department and supervising the employees beneath

him; [8] and finally, (6) the fact that the University's receivables did not improve after Dodge left its employ does not disprove that this was one of the University's complaints about his performance. (See: Record Document No. 43, filed March 26, 1992, pp. 24–28)

In contrast to *Chipollini* and *Sorba,* the dearth of relevant evidence here is obvious. In *Chipollini, supra,* 814 F.2d at 900, the Third Circuit stated:

> In opposing the summary judgment motion Chipollini presented specific evidence which supports his position that the defendant's proffered reason is unworthy of credence. This evidence, if credited by the factfinder at trial, would be sufficient to meet Chipollini's burden to counter the defendant's reasons as pretextual as set forth in *Burdine....*

To prove that the stated reason for his discharge was pretext, Chipollini produced, *inter alia,* his own affidavit which contradicted defendant's position that he had failed to perform certain duties, and rebutted defendant's assertion that plaintiff's medical problems were in part responsible for its decision; and letters of recommendation written after plaintiff's discharge which recommended him highly, and stated that he "carried out his responsibilities with a high degree of professionalism, expertise and dedication", and that he was "nothing short of outstanding, personally and professionally." Plaintiff also produced a copy of the Personnel Action Authorization form for his discharge and pointed out that the "Reasons Discharged" space on it was blank. *Chipollini, supra,* 814 F.2d at 901.

In *Sorba, supra,* 821 F.2d at 205, the Third Circuit reversed the trial court's grant of summary judgment, stating:

> The record contains indirect evidence which, if credited by the factfinder at trial, would be sufficient to support a finding that it is more likely than not that the employer did not act for its proffered reason.

---

**8.** See generally: Record Document No. 43, filed March 26, 1992, Exhibit "L", pp. 40–43.

Dodge also points out that Aungst testified in the Unemployment Compensation hearing that he was "pleased that Tom came back to work and handled his responsibilities." (Record Document No. 43, filed March 26, 1992, Exhibit "L", p. 39) Plaintiff fails to point out that Aungst made this statement in response to the following series of questions by plaintiff's counsel:

QCL: With respect to initiative and motivation, what was the problem there?

AEW1: That Tom did only he's [sic] expected to, did it minimally and wasn't able to or wasn't willing to help out when we were understaffed and behind the gun on projects.

QCL: Was it evidence of that fact that you [sic] returned to work nearly two weeks ahead of his doctor's advice and right after he nearly bled to death?

AEW1: Pardon me?

QCL: I said was it evidence of his lack of initiative and motivation that he returned to work nearly two weeks ahead of his doctor's advice and right after he nearly bled to death?

AEL: Argument rather than question.

QR: Well, I'll note the objection, but yes, I'm going to allow the question.

AEW1: I—I was pleased that Tom came back to work and handled his responsibilities.

When considered in context, Aungst's statement is not inconsistent with his prior statements about Dodge's performance.

The statements plaintiff points to are not inconsistent with the employer's statement, which has been made consistently throughout and prior to this action, that Dodge was terminated because of the shortcomings noted in his May, 1989 evaluation, namely because of problems he had dealing with personnel in the Financial Aid Office. Cf. *Chauhan*, 897 F.2d at 128 (Plaintiff pointed to "inconsistencies and implausibilities" in defendant's explanation which "could support an inference [of discrimination].")

Plaintiff's evidence does nothing more than attack the fairness, and perhaps the wisdom, of the University's conduct toward him and the job performance standards it demanded of him. Such evidence does not prove an ADEA violation.

■ The ADEA does not protect employees from unfair employment actions but only from employment actions motivated by the person's age. It is not the role of the courts to assess the fairness or unfairness of the employer's decision, but only to determine whether that decision was motivated by an illegal consideration. *Hawkins v. Ceco Corp.*, 883 F.2d 977 (11th Cir.1989) (Title VII case), *cert. denied* 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990); *Pollard v. Rea Magnet Wire Company, Inc.*, 824 F.2d 557, 560 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1988) (Title VII case) and *Trail v. Charles Jacquin & Cie*, 48 FEP Cases 795, 803 (E.D.Pa. Oct 20, 1988), (available on WESTLAW at 1988 WL 111984), (Title VII case), *aff'd per curiam*, 884 F.2d 1385, (3rd Cir.1989). Implementing and adhering to neutral personnel policies is not discrimination. *Miller v. Yellow Freight Systems, Inc.*, 758 F.Supp. 1074, 1079 (W.D.Pa.) (Smith, J.) (Title VII case), *aff'd per curiam*, 941 F.2d 1202 (3d Cir. 1991).

In *Billet v. CIGNA Corp.*, 940 F.2d 812 (3d Cir.1991), *supra*, an ADEA case, the Third Circuit stated:

Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions.

. . . .

A plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, this court will not interfere in an otherwise valid management decision. To require less would be to expose to litigation every management decision impacting on a protected party.

*Billet, supra*, 940 F.2d at 825 and 828. Here, plaintiff clearly has not met this burden, and this court therefore will not interfere in what was clearly a management decision on the part of the University. We will, therefore, deny plaintiff's motion to

reverse the grant of summary judgment on the ADEA claim.

*Outstanding discovery requests*

■ Plaintiff argues that the court should not have ruled on the motion for summary judgment while discovery remained open. At no time during the pendency of defendant's motion did plaintiff request that the court *not* rule on the motion, advise the court of specific discovery which it believed would offer proof to rebut the reasons given by the University, or request an extension of time to respond to defendant's motion. See: Fed. R.Civ.P. 56(f).

What plaintiff did do was state generally in his opposing brief (Record Document No. 27, filed March 2, 1992) that he anticipated that proof of his claim would be forthcoming. Plaintiff stated:

... [T]he procedural status of the case ... make it abundantly clear that the Defendant's Motion for Summary Judgment is wholly inappropriate and untimely.

(Record Document No. 27, filed March 2, 1992, p. 2) Plaintiff then goes on to recite recent discovery requests served by *defendant* and states at the end of that discussion:

Additionally, the Plaintiff is in the process of scheduling depositions of several *potential* witnesses, including Donald Aungst, whose deposition on August 27, 1991, was agreed, on the record, to be deemed to remain open.

(Record Document No. 27, filed March 2, 1992, p. 2) Plaintiff then resumes his discussion about *defendant's* pending discovery requests and concludes with the general statement:

The fact that discovery in this case has been allowed to remain open by Order of the Court based upon the mutual consent of both parties clearly suggests that a Motion for Summary judgment is premature at best.

---

9. The court's order granting summary judgment was entered March 13, 1992, and the discovery

(Record Document No. 27, filed March 2, 1992, p. 3)

We also note that plaintiff should certainly have anticipated that the court would rule on the motion during the month of March, since jury selection was scheduled to take place on April 6, 1992.

Plaintiff had ample opportunity to advise the court before the summary judgment motion was decided of the pendency of what he *now* claims to be potentially important discovery and seek an extension of time to respond to defendant's motion. Plaintiff did not so, and his current reliance on a motion for reconsideration to accomplish what should have been accomplished before the summary judgment motion was decided is unavailing.

■ Further, this is not a situation in which defendant's motion for summary judgment followed closely on the heels of service of the complaint. This action was filed November 16, 1990, and plaintiff had more than one year to conduct discovery. If defendant's responses to his discovery requests were not forthcoming, he should have filed a motion to compel. Fed. R.Civ.P. 37. No such motion was filed. Under the circumstances, the fact that discovery had four days yet to run when the court's summary judgment order was entered is totally irrelevant.[9]

Plaintiff's suggestion that the court should have denied or declined to rule on defendant's summary judgment motion based on plaintiff's hopes that relevant evidence might surface in the four days remaining in the discovery period reflect a total misunderstanding of the United States Supreme Court's holdings on the grant or denial of summary judgment and of the Federal Rules of Civil Procedure.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

period terminated March 17, 1992.

1. Plaintiff's motion (Record Document No. 41, filed March 25, 1992) is granted in part.

2. Reconsideration of the order and memorandum dated March 13, 1992 is granted to the extent of the relief herein provided.

3. Plaintiff's request to alter or amend the judgment entered March 13, 1992 is denied with respect to his claim under The Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1988).

4. Plaintiff's request to alter or amend the judgment entered March 13, 1992 is granted with respect to his common law claim for breach of contract. Plaintiff's breach of contract claim is dismissed without prejudice.

5. The order dated March 13, 1992 (Record Document No. 39) is vacated to the extent inconsistent with this order.