Robert **REICH,** Secretary of the U.S. Department of Labor, Plaintiff,

v.

Fred **COMPTON,** Joseph McHugh, John Neilson, Frederick Hammerschmidt, Gersil N. Kay, Electrical Mechanics Assoc., Fidelity–Philadelphia Trust Co., and the International Brotherhood of Electrical Workers, Local 98, Defendants.

Civ. A. No. 88–7920.

United States District Court, E.D. Pennsylvania.

Sept. 1, 1993.

---

Marshall H. Harris, U.S. Dept. of Labor, Office of Solicitor, Philadelphia, PA, Brenda Joyce Stovall, William P. Tedesco, U.S. Dept. of Labor, Office of General Counsel, Plan Benefits Sec. Div., Washington, DC, for plaintiff.

Laurance E. Baccini, Carol A. Cannerelli Van Poortvliet, Wolf, Block, Schorr and Solis–Cohen, Bernard N. Katz, Michael Katz, Adam H. Feinstein, Meranze and Katz, Harry R. Blackburn, N. Marlene Fleming, Blackburn, Michelman & Tyndall, Richard B. Sigmond, Richard C. McNeill, Sagot, Jennings & Sigmond, Philadelphia, PA, for defendants.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Before me is the motion of plaintiff the Secretary of the United States Department of Labor ("the Secretary") for reconsideration of my July 21, 1993 order, 834 F.Supp. 743, entering judgment against plaintiff and in favor of defendants on plaintiff's claims alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, by Local Union No. 98 International Brotherhood of Electrical Workers Pension Plan ("the Plan") fiduciaries Fred Compton ("Compton"), Joseph McHugh ("McHugh"), John Neilson ("Neilson"), Frederick Hammerschmidt ("Hammerschmidt"), Gersil Kay ("Kay") and the Fidelity–Philadelphia Trust Company ("Fidelity"), and by Plan non-fiduciaries the International Brotherhood of Electrical Workers Local 98 ("Local 98") and the Electrical Mechanics Association ("EMA").

I am being called upon to decide:

■ Whether a mortgage and loan and subsequent sale of the mortgage note by a pension plan to a third party corporation that I have previously held is not a party in interest to the plan under the statute were prohibited indirect transactions with a party in interest or indirect transactions for the use and benefit of a party in interest. I find that they were not.

■ Whether statutory prohibitions against dealings between a plan and its fiduciaries were violated because three plan

trustees were members—but not a majority—of the board of trustees of a corporation that purchased a mortgage note from the plan? I find that they were not.

## I. *Procedural background.*

My July 21, 1993 memorandum and order granting summary judgment in favor of the non-moving defendants recites the lengthy procedural history of this challenge by the Secretary to the Plan's 1972 mortgage and loan to EMA and the subsequent 1984 sale of the mortgage note to EMA as party in interest transactions that violated ERISA.

I held that ERISA, as a matter of law, did not allow me to pierce the corporate veil of a corporation that is not a "party in interest" to the plan as defined by the statute but which is closely related to—but not co-extensive with—a labor organization that is a "party in interest" to the plan in order to find that the pension plan's mortgage and loan and subsequent sale of the mortgage note to the corporation were not prohibited "party in interest" transactions.

On July 29, 1993, the Secretary filed a self-styled "motion for reconsideration" attempting "to demonstrate that the literal text of ERISA does indeed prohibit the transactions in this case, even though EMA is not a party in interest." (Secretary's motion at 1.)

■■■ I will assume that the Secretary's motion, which does not cite any procedural authority, is brought pursuant to Federal Rule of Civil Procedure 59(e). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.) (setting forth the standard for a motion for reconsideration), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Thus, a Rule 59(e) motion must rely on at least one of three grounds: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Dodge v. Susquehanna Univ.,* 796 F.Supp. 829, 830 (M.D.Pa. 1992).

"With regard to the third ground, ... any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a disagreement between the Court and the litigant." *Id.* (citation omitted). Motions for reconsideration should not relitigate issues already resolved by the court and should not be used "to put forward additional arguments which [the movant] could have made but neglected to make before judgment." *Id.* (citation omitted); *see also Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1107 (E.D.Pa.1992).

The Secretary has not shown that I made an error of law or fact and does not present any newly discovered evidence. At best, he advances "additional" arguments—not raised in his prior brief on the impact of *Mertens v. Hewitt Assoc.,* —— U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)—to demonstrate that the plain language of the statute explicitly authorizes his claims. The Secretary admits that he did not raise these arguments in his earlier brief because "counsel failed to anticipate that the Court, in deference to *Mertens,* would read ERISA as narrowly as it did." (Secretary's motion at 2.).

■■■ Thus, it would be appropriate to deny the motion on purely procedural grounds. Nonetheless, I will address the merits of the statutory construction advanced by the Secretary in his motion.

## II. *Discussion.*

The dispositive issue in this case has always been whether the Plan's mortgage and loan, and subsequent sale of the note, to EMA were party in interest transactions prohibited by ERISA. The provision of ERISA at issue provides as follows:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

Section 406(a)(1), 29 U.S.C. § 1106(a)(1).

The Secretary's first strategy was to utilize alter ego principles to establish *direct* transactions between the Plan and the party in interest Local 98. He asked me to pierce the corporate veil of EMA, which he admitted was *not* a party in interest, to find that the fiduciaries violated ERISA because they caused the Plan to make a loan and mortgage, and subsequently sell the note, to Local 98.[1]

The Secretary now recharacterizes the transactions as *indirect* party in interest transactions that are explicitly prohibited by the statute.

Section 406(a)(1)(A)–(C) prohibits indirect transactions "between the plan and a party in interest." The statute states that a fiduciary cannot cause a plan to indirectly transfer assets to a party in interest. ERISA does not contemplate transfers to "indirect parties in interest"—the transferee is either a party in interest under the statute or it is not. I have already held that I cannot construe the statute to find that EMA, the party to which the assets were transferred, was a party in interest.

The Secretary also argues that if the transactions were not indirect transactions *between* the plan and a party in interest, then they still violated Section 406(a)(1)(D) prohibitions against indirect "transfers to, or use by or for the benefit of, a party in interest, of any assets of the plan."

In *Brock v. Citizens Bank of Clovis*, 841 F.2d 344 (10th Cir.1988), *cert. denied*, 488 U.S. 829, 109 S.Ct. 82, 102 L.Ed.2d 59 (1988), the trustees of the pension plan covering bank employees loaned fund assets to a third party who used the loan proceeds to pay its debt to the bank—a party in interest as the sponsor of the plan.

The Tenth Circuit rejected a claim that the loan to a non-party in interest third party violated the statute's prohibitions against party in interest transactions:

[T]here is no specific provision of ERISA § 406, 29 U.S.C.A. § 1106, which prohibits a fiduciary from using plan assets for such a transaction; hence, if the violation exists, it must by implication.

.    .    .    .    .

.... [U]nless the act complained of falls within the specific list of dealings proscribed by § 1106 (or within the self dealing provision of § 1104(a)(1), the transaction does not constitute a per se violation of ERISA.

This is not to say that the interjection of a third party into an otherwise prohibited transaction will sanitize an illegal dealing. Indeed, § 1106(a)(1) by its own terms applies to sham dealings by proscribing "indirect" transactions. Accordingly, if the Secretary could have proved that the loans to third parties were a sham to avoid application of § 1106(a), the transactions would have been prohibited transfers of plan assets.

*Id.* at 347.

On these compelling facts, where the plan assets eventually ended up in the hands of the party in interest, the Tenth Circuit did not find a prohibited party in interest transaction. Here, EMA was not "interjected" between the Plan and Local 98. The transactions ended with EMA, the borrower and subsequent purchaser of the mortgage note. No cash "benefits" or "plan assets" ever passed to Local 98, the party in interest.

Nonetheless, the Secretary insists that Local 98 "indirectly" benefitted from the trans-

1. *See* complaint at ¶ 8 (the loan and subsequent sale of the loan to EMA *"were, in fact, transac-* tions with Local 98.")

actions because (1) the original note was used to finance a building where Local 98 was a tenant and (2) it loaned EMA the purchase price of the note which the trustees sold to EMA at the fair market value, a price less than the outstanding balance due.[2]

As to the first argument, Local 98 became a tenant in 1980 and, until 1988, long after these transactions, paid $48,000 in annual rent. (*See* my memorandum opinion of July 21, 1993 at n. 6.) As to the second argument, Local 98 had no obligations under the note and no obligation to finance EMA's purchase of the note. EMA, in turn, was not obligated to purchase the note from the Plan at the accounting value on demand.

Finally, the Secretary relies on *Cutaiar v. Marshall,* 590 F.2d 523 (3rd Cir.1979) as authority for the proposition that, with respect to the 1984 sale of the note to EMA, Compton, Neilson and McHugh acted in a joint capacity as plan fiduciaries, Local 98 officers and EMA board members in violation of section 406(b)(1) and (2) prohibitions against dealings between a plan and its fiduciaries.

Section 406(b)(1) and (2), 29 U.S.C. § 1106(b)(1) and (2) provides as follows:

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, ...

In *Cutaiar,* the identical trustees of two employee benefit plans whose participants and beneficiaries were not identical violated section 406(b)(2) when they effected a loan between the plans.

The Secretary's reliance on *Cutaiar* is misplaced. As noted by the Tenth Circuit in *Brock, supra,* 841 F.2d at 347 n. 2, *Cutaiar* did not involve a transaction with a third party. Moreover, the boards of the Plan and EMA were not identical and Compton, McHugh and Neilson did not constitute a majority of EMA's board. (*See* memorandum of July 21, 1993 at n. 6). As to a purported violation of section 406(b)(1), EMA is not a "fiduciary" to the Plan because they share several common trustees. Likewise, the purported "conflict of interest" violation of section 406(b)(2) is sheer hypothesis unsupported by any evidence that these three defendants—who did not control the board of EMA—acted on behalf of EMA, the adverse party to the Plan in the sale of the note.

For the foregoing reasons, I will deny the Secretary's motion for reconsideration.

---

2. This position contradicts the Secretary's earlier position in this litigation when he admitted that EMA was the party that obtained a "windfall" when the note was sold at the fair market rather than the accounting value. Amended statement of undisputed facts in support of plaintiff's motion for summary judgment at ¶ 42.