FORT WASHINGTON RESOURCES, INC., Plaintiff,

v.

Robert H. TANNEN, Ph.D, Defendant/Counterclaimant

v.

Kirk PENDLETON, Counterclaim Defendant

and

Fort Washington Resources, Inc., Plaintiff/Counterclaim Defendant.

No. 93–CV–2415.

United States District Court, E.D. Pennsylvania.

June 27, 1994.

Order Denying Reconsideration and Denying Sanctions Aug. 4, 1994.

Allan C. Preziosi, Lightman & Associates, Philadelphia, PA, for Fort Washington, Kirk Pendleton.

Laurence I. Tomar, Elizabeth A. Hunter, Law Office of Laurence I. Tomar, Yardley, PA, for Robert H. Tannen.

## MEMORANDUM & ORDER

JOYNER, District Judge.

Before the Court is plaintiff's renewed motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, Fort Washington Resources, Inc., commenced this action in May 1993 against defendant, Dr. Tannen, seeking damages for breach of contract, negligent performance of professional services, intentional interference with prospective business advantage, and conversion. Defendant filed a counterclaim against plaintiff and Kirk Pendleton, plaintiff's chief executive officer, seeking damages for breach of contract, libel and slander, and fraudulent and negligent misrepresentation.

In our opinion of March 9, 1994, this Court decided earlier cross-motions for summary judgment made by both parties. *See Fort Washington Resources, Inc. v. Tannen*, 846 F.Supp. 354 (E.D.Pa.1994). One part of plaintiff's earlier motion was denied as moot because it concerned the misrepresentation aspects of defendant's counterclaim, on which we had granted defendant leave to amend. *Id.* at 366. Defendant has since amended his counterclaim. Pursuant to our opinion, *id.*, plaintiff and Kirk Pendleton have renewed their motion for summary judgment on the fraudulent and negligent misrepresentation counterclaims. For the reasons that follow, this additional motion is denied.

### Facts

The pertinent facts of this case are summarized briefly here and are presented in more detail in our earlier opinion. *See id.* at 356–57. Plaintiff, a Pennsylvania firm en-gaged in the funding and development of a new drug known as Fluasterone, hired defendant as a consultant to aid in the preparation and filing of a regulatory document known as an Investigational New Drug application, or "IND." An IND is required by the United States Food and Drug Administration during the early stages of new drug development.

In his amended counterclaim alleging fraudulent and negligent misrepresentation, defendant alleges that plaintiff and Kirk Pendleton misrepresented to defendant that $2.5 million had been invested in the Fluasterone IND project when they knew or should have known that such funding was not and would not be available. Defendant further contends that Kirk Pendleton failed to inform him that a license agreement between plaintiff and Research Corporate Technologies required the IND to be filed by April 15, 1993, and that this failure constituted an additional misrepresentation made with the intent of inducing defendant to join the project. Defendant argues this alleged false information was communicated to him fraudulently and negligently, and that he justifiably relied on the information and suffered damages as a proximate result. Plaintiff contends to the contrary that no false information was communicated by the plaintiff to the defendant and that, even if it had been, defendant did not justifiably rely on such information. Furthermore, plaintiff argues defendant suffered no damages even assuming defendant's allegations are true.

### Standard for Summary Judgment Decisions

In reviewing a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To determine whether there is a genuine issue of material fact, the Court must ask whether a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must

draw all reasonable inferences in favor of the nonmovant. *Id.* at 256, 106 S.Ct. at 2512. Where, as here, the nonmoving party bears the burden of proof at trial, the moving party bears the initial burden of showing an absence of factual issues; but once this burden is satisfied the nonmoving party must then establish sufficient evidence for each element of its case. *J.F. Feeser, Inc. v. Serv-a-Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

### Fraudulent Misrepresentation

■ The elements of a common-law claim for fraudulent misrepresentation in Pennsylvania are (1) a misrepresentation, (2) the fraudulent utterance thereof, (3) an intention by the maker that the recipient will be induced to act, (4) justifiable reliance by the recipient on the misrepresentation, and (5) damage to the recipient as a proximate result of the reliance. *Browne v. Maxfield,* 663 F.Supp. 1193, 1202 (E.D.Pa.1987) (citing *Scaife Co. v. Rockwell–Standard Corp.,* 446 Pa. 280, 285 A.2d 451, 454 (1971)). Referring to the mental state of the person alleged to have communicated the false information, however, courts have held that fraud can take many forms. For example, "[i]t is well settled that fraud is proved when it is shown that the false representation was made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false." *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983) (citing *Warren Balderston Co. v. Integrity Trust Co.,* 314 Pa. 58, 170 A. 282 (1934)).

■ Furthermore, fraud must be proved by a higher evidentiary standard; the party alleging fraud has the burden of proving it by clear, precise and convincing evidence. *Browne,* 663 F.Supp. at 1202; *Moser v. DeSetta,* 527 Pa. 157, 589 A.2d 679, 682 (1991). Under *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512, a summary judgment determination must be made in light of the evidentiary standard to be applied at trial. *Browne,* 663 F.Supp. at 1206. There-

fore, to withstand plaintiff and Kirk Pendleton's motion for summary judgment, there must be sufficient evidence for a reasonable jury to find for the defendant, by a clear, precise and convincing standard, on each of the elements of fraudulent misrepresentation.

■ *Misrepresentation.* False information may be communicated directly, or indirectly by the nondisclosure of material facts. *Delahanty,* 318 Pa.Super. 90, 464 A.2d at 1252. The deliberate non-disclosure of a material fact is the equivalent of the affirmation of a falsity, and an innocent misrepresentation is actionable if it pertains to a matter material to the transaction involved. *Id.* (citing *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 51 A.2d 759, 764 (1947)).

■ With respect to the alleged misrepresentation about funding, plaintiff and Kirk Pendleton contend there is no evidence to support defendant's allegation that plaintiff or Kirk Pendleton uttered the alleged false information. Defendant points to his own testimony to the contrary, and argues that testimony of Arthur Schwartz and Abraham Bavley supports the allegation that Kirk Pendleton misrepresented monies available to the Fluasterone project.

The evidence in the record indicates a genuine issue of fact exists on this element. Defendant testified in his deposition that he was told in June 1992 by Jim Saltzman and Kirk Pendleton, with Arthur Schwartz and Abe Bavley present, that $2.5 million was available. On the other hand, Kirk Pendleton has filed an affidavit stating that neither he nor his agent, at the time of defendant's hiring, advised defendant that $2.5 million was available. Nevertheless, the testimony of Bavley and Schwartz indicates Kirk Pendleton expressed a similar level of funding to them at other times during the project. For example, Bavley testified that Kirk Pendleton had represented at meetings where defendant was present that "a couple million dollars" was available. And, there is evidence tending to show such a level of funding was not, in fact, available. For instance, plaintiff's 1991 federal income tax return in-

dicates cash assets of $206,327 available to plaintiff at the end of 1991. Taking the evidence as a whole, and drawing from it all reasonable inferences in favor of the nonmovant, therefore, there is sufficient clear, precise and convincing evidence for a reasonable jury to conclude that plaintiff or Kirk Pendleton misrepresented the funding available for the project.

■ With respect to the alleged misrepresentation about the IND filing deadline, plaintiff and Kirk Pendleton argue that, since defendant testified he was aware of the deadline, no misrepresentation occurred. While defendant has testified that he was told prior to March 11, 1993, that he must complete the IND by April 15, 1993, defendant also filed an affidavit stating that, at the time he was hired around June 1992, he was not told by Kirk Pendleton that he must file the IND within four to six months and/or by April 15, 1993. Kirk Pendleton, on the other hand, has filed an affidavit stating that he advised defendant at the time of his hiring that the contractual deadline of April 15, 1993 existed. Therefore, there is a genuine issue of fact with respect to this alleged misrepresentation as well.

■ *Fraudulent Utterance.* Fraud is proved when it is shown that a false representation was "made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false." *Delahanty*, 318 Pa.Super. 90, 464 A.2d at 1253. Furthermore, as stated above, deliberate non-disclosure has been found equivalent to intentionally affirming a falsity. *Id.* (citing *Neuman v. Corn Exchange National Bank & Trust Co.*, 356 Pa. 442, 51 A.2d 759, 764 (1947)).

■ In their briefs plaintiff and Kirk Pendleton offer no argument with respect to their knowledge about the funding available to the Fluasterone project. Defendant, on the other hand, points to plaintiff's 1991 federal income tax return as evidence tending to show that plaintiff and Kirk Pendleton must have· known that $2.5 million was not available, given the amount of assets indicated in the return.

We agree with defendant's argument to the extent that it indicates a question of fact on this element. That is, if the defendant succeeds in proving that the alleged misrepresentation occurred, then the tax return presents sufficient clear, precise and convincing evidence for a reasonable jury to conclude that the misrepresentation was made in "conscious ignorance of the truth."

■ We reach a similar conclusion with respect to the alleged misrepresentation about the IND filing deadline. There is evidence that plaintiff was contractually bound to file the IND by April 15, 1993. If defendant succeeds in proving that plaintiff or Kirk Pendleton's failure to communicate the deadline constituted a misrepresentation, then there is sufficient clear, precise and convincing evidence for a reasonable jury to conclude that the misrepresentation was made in "conscious ignorance of the truth."

■ *Justifiable Reliance.* Whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false. *Scaife Co. v. Rockwell–Standard Corp.*, 446 Pa. 280, 285 A.2d 451 (1971) (citing *Emery v. Third National Bank*, 308 Pa. 504, 162 A. 281 (1932)). Where the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon. *Siskin v. Cohen*, 363 Pa. 580, 70 A.2d 293, 295 (1950). And, in deciding whether the recipient justifiably relied on information, a court may consider the degree of sophistication of the parties and the history of the negotiation process between them. *Greenberg v. Tomlin*, 816 F.Supp. 1039, 1056 (E.D.Pa.1993).

■ Plaintiff and Kirk Pendleton argue that since defendant had presented budgets (after the alleged misrepresentation was made) calling for between $210,000 and $343,000 to file the IND, defendant could not have justifiably relied upon the alleged misrepresentation that $2.5 million was available. Furthermore, they contend, defendant's testimony that he sought employment with plaintiff years before the alleged mis-

representations shows that he did not justifiably rely on the misrepresentations in accepting employment with plaintiff. On the other hand, defendant argues that in accepting employment with plaintiff he relied on the alleged misrepresentation that $2.5 million was available, and that he would not have accepted employment with plaintiff had he known the project was underfunded.

Recalling that we must draw all reasonable inferences in favor of the defendant, there is sufficient clear, precise and convincing evidence for a reasonable jury to conclude that defendant justifiably relied on the alleged misrepresentation, providing defendant succeeds in proving the misrepresentation was made in the first place. That is, a jury could reasonably conclude that a consultant could justifiably rely on a chief executive officer's representation of funding levels available to a project the consultant was considering joining. That the defendant may have submitted budgets calling for less than that amount of funding following the project's inception does not oppose this conclusion, nor does the fact that he may have sought employment years before the alleged misrepresentation. Defendant could have submitted such budgets, sought such employment, and still relied upon the misrepresentation. As the court stated in *Delahanty*, 318 Pa.Super. 90, 464 A.2d at 1252, "[o]ne deceived need not prove that fraudulent misrepresentation was the sole inducement...."

 We reach a similar conclusion with respect to defendant's reliance on the alleged misrepresentation of the IND filing deadline. Plaintiff and Kirk Pendleton argue that defendant stated at the time of hiring that he could complete the IND within four to six months. Therefore, they contend, defendant could not justifiably have relied upon the alleged misrepresentation that the IND must be filed by April 15, 1993. This argument is without merit; defendant arguably could have stated that it would take six months to complete the IND and at the same time could have justifiably relied, in accepting employment on the project, on the alleged misrepresentation about the filing deadline.

 *Damages.* The victim of a misrepresentation is entitled to all pecuniary losses which result from his reliance on the misrepresentations. *Browne*, 663 F.Supp. at 1206; *Delahanty*, 318 Pa.Super. 90, 464 A.2d at 1257. Plaintiff and Kirk Pendleton argue that defendant did not suffer damages since he testified that he phased out his other consulting activities prior to the alleged misrepresentation. However, defendant states in an affidavit that he purposefully did not seek other employment although other employment was available during his consultancy with plaintiff, and, further, that he did not develop his consultancy business because of his employment with plaintiff. This is sufficient clear, precise and convincing evidence to allow a reasonable jury to find that, in accepting employment with plaintiff in reliance on the alleged misrepresentations, defendant suffered proximate pecuniary damages.

### Negligent Misrepresentation

 Negligent misrepresentation shares three of the five elements of fraudulent misrepresentation, namely: (1) a misrepresentation, (2) justifiable reliance by the recipient, and (3) damages proximately cause by that reliance. *Browne*, 663 F.Supp. at 1202. It differs from fraudulent misrepresentation in the standard of proof and mental state required; only a preponderance of the evidence is required and the alleged misrepresenter must be shown only to have failed to "exercise reasonable care or competence in obtaining or communicating the information." *Id.* (citing Restatement (Second) of Torts § 552; *Rempel v. Nationwide Life Insurance Co.*, 471 Pa. 404, 370 A.2d 366 (1977) (adopting the Restatement definition)). Plaintiff and Kirk Pendleton argue that, even under the lesser evidentiary standard required to prove negligent misrepresentation, there is insufficient evidence to establish issues of fact on the elements above.

Since we have found sufficient evidence to defeat plaintiff and Kirk Pendleton's motion for summary judgment on defendant's fraudulent misrepresentation claim, we necessarily find sufficient evidence to defeat the motion on the negligent misrepresentation claim as well. That is, on the common elements of misrepresentation, justifiable reliance, and

damages, evidence sufficient under a clear and convincing standard is necessarily sufficient under a preponderance of the evidence standard. Finally, with respect to the negligence aspect, there is sufficient evidence to present a genuine issue of fact on whether plaintiff and Kirk Pendleton exercised reasonable care in making the alleged misrepresentations. That is, assuming misrepresentation, justifiable reliance, and damages can be proved, a reasonable jury could find by a preponderance of the evidence that a chief executive officer's failure to accurately describe the funds available for a research and development project, or to advise the consultant of the IND filing deadline, constituted a breach of his duty to exercise reasonable care in communicating information to a potential member of the Fluasterone project team. Therefore, there is a genuine issue of fact on this element as well.

### Conclusion

In sum, there exist genuine issues of material fact on all elements of defendant's counterclaims alleging fraudulent and negligent misrepresentation. Therefore, plaintiff and Kirk Pendleton's motion for partial summary judgment dismissing defendant's fraudulent and negligent misrepresentation counterclaims is denied. An appropriate order follows.

At issue before the Court are defendant's motion for reconsideration of this Court's Order dated November 30, 1993, defendant's combined motion to compel and counterclaim defendant Kirk Pendleton's motion for sanctions pursuant to Rule 11, 28 U.S.C. § 1927 and the Court's inherent power. For the reasons that follow, we will deny all of the above motions.

### A. Motion for reconsideration and motion to compel

■ "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986) (citations omitted); *Reich v. Compton*, 834 F.Supp. 753, 755 (E.D.Pa.1993). Under

Rule 59(e) of the Federal Rules of Civil Procedure, a party must rely on one of three grounds: 1) the availability of new evidence not previously available; 2) an intervening change in controlling law, or 3) the need to correct a clear error of law or to prevent manifest injustice. *Reich*, 834 F.Supp. at 755. Under both Rule 59(e) and Rule 60(b) of the Federal Rules, a party may only submit evidence in support of a motion for reconsideration if it is newly discovered. *Harsco*, 779 F.2d at 909; Fed.R.Civ.P. 60(b)(2) (1994).

■ Courts in this Circuit recognize that " 'any litigant considering bringing a motion to reconsider based upon [the third ground] should evaluate whether what may seem to be a clear error of law is in fact simply a disagreement between the Court and the litigant.' " *Reich*, 834 F.Supp. at 755. Parties are not free to relitigate issues that the Court has already decided, nor should parties make additional arguments which should have been made before judgment. *Id.; Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992).

■ We need not repeat the facts in this case as they have previously been set forth at length by this Court. *See Fort Washington Resources, Inc. v. Tannen*, 846 F.Supp. 354 (E.D.Pa.1994). Suffice it to say that the parties have brought numerous pre-trial motions during the course of litigation. One issue already addressed by this Court is whether Kirk Pendleton's tax returns are discoverable by defendant. On two prior occasions defendant has sought said tax returns, and both times we have denied defendant's request, stating that such returns are irrelevant to the issues in this case. Defendant now seeks to discover the returns for a third time, basing his motion on the fact that we have now allowed him to amend his counterclaims to state a claim for piercing the corporate veil, and on alleged "newly discovered evidence."

Defendant's newly discovered evidence consists of a list of investors and a "cash analysis" of Fort Washington Resources, along with a copy of a demand note evidencing a loan to Fort Washington Resources from Cairnwood Inc. Profit Sharing Plan. Defendant contests that this evidence shows

that Fort Washington Resources "was merely a facade for the operations of Kirk Pendleton and further establishes the informal manner in which [Fort Washington Resources] was operated." Defendant's motion, para. 5. Defendant further alleges that Mr. Pendleton operated Fort Washington Resources illegally and that his tax returns will demonstrate this along with the apparent favoritism Mr. Pendleton had of his investments over the investments of others, apparently by showing that Mr. Pendleton received tax breaks from investing in Fort Washington Resources.

■ Defendant, however, fails to explain the relevancy of Mr. Pendleton's tax returns to the present action. Although defendant apparently feels the tax returns will bear on the success of his claim for piercing the corporate veil, the two have nothing to do with one another. Even if Mr. Pendleton received tax breaks by investing in Fort Washington Resources and even if he was one of the major investors, his tax returns simply have no bearing on whether Fort Washington Resources is a sham corporation. To determine whether the corporate veil should be pierced, courts look at various factors such as whether the corporation was inadequately capitalized, whether there was an intermingling of funds between the corporation and the personal assets of the dominant shareholder, whether corporate formalities were observed, the existence, if any, of officers and directors of the corporation, the failure to pay dividends and use of the corporation to perpetrate a fraud. *Village at Camelback Property Owners Ass'n v. Carr,* 371 Pa.Super. 452, 538 A.2d 528, 535 (1988), *allocatur granted,* 519 Pa. 668, 548 A.2d 257 (1988); *Lycoming County Nursing Home Ass'n, Inc. v. Pennsylvania Dept. of Labor and Indus.,* 156 Pa.Cmwlth. 280, 627 A.2d 238, 243 (1993). Mr. Pendleton's tax returns would not evidence any of these factors. Furthermore, even if defendant had raised the argument that Mr. Pendleton had used the assets of Fort Washington personally, which he has not, Mr. Pendleton's tax returns would not readily demonstrate this.

Defendant has failed to demonstrate the relevancy of the tax returns in order to overcome the strong public policy concerns favoring nondisclosure of tax returns. *See DeMasi v. Weiss,* 669 F.2d 114, 119 (3rd Cir.1982) (nondisclosure of tax returns is favored because of public policy concerns); *Terlescki v. E.I. duPont de Nemours & Co.,* Civ. No. 90–6854, 1992 WL 75015, at *1, 1992 U.S. Dist. LEXIS 4213, at *2–3 (E.D. Pa. April 7, 1992) (tax returns must first be shown to be relevant). Further, this Court has been quite liberal in allowing production of all the financial records of Fort Washington Resources in order for defendant to establish his claim for piercing the corporate veil. Thus, for all these reasons, we must deny defendant's motion for reconsideration.[1]

### B. Motion for sanctions

■ Mr. Pendleton now seeks sanctions from defendant for filing the above motions on the basis that the motions were only designed to harass and intimidate him. He further argues that defendant has misrepresented to the Court that the evidence attached to defendant's motion is "newly discovered." However, for the following reasons, we will deny Mr. Pendleton's motion.

■ An attorney may be sanctioned in exceptional circumstances under Rule 11 where he files a motion that is frivolous and merely intended to harass or cause unnecessary delays or increases in the costs of litigation. 28 U.S.C. Rule 11 (1994); *Martin v. Farmers First Bank,* 151 F.R.D. 44, 48 (E.D.Pa.1993). The standard for imposing sanctions under this rule is an objective standard, ie., "whether a reasonable attorney would have acted in a particular way." *Griggs v. Bic Corp.,* 844 F.Supp. 190, 202 (M.D.Pa.1994) (citations omitted). Under 28 U.S.C. § 1927, costs may be imposed upon an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1994). However, before costs can be imposed under section 1927, a finding of willful bad faith on the part of the attorney must be made so as to avoid any

---

1. Defendant also seeks the tax returns of Cairnwood Inc. for reasons that are entirely unclear to the Court. However, Cairnwood is not even a party to this action, and we will not allow defendant to pursue this "fishing expedition" with regard to a non-party at this late date.

chilling effect upon zealous representation. *Hackman v. Valley Fair*, 932 F.2d 239, 242–43 (3rd Cir.1991). Likewise, this Court has the "inherent power" to impose sanctions where an attorney has acted in " 'bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 504–05 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (citations omitted).

Under the circumstances of this case, we decline to impose sanctions. While we have addressed the issue of Mr. Pendleton's tax returns previously, the difference between this motion and the last two motions is that in the interim, we allowed defendant to amend his counterclaims to state a claim for piercing the corporate veil. Although we find defendant's motion for reconsideration to be without merit, defendant appears sincere in his belief that the tax returns would be helpful to this claim. As such, we cannot say defendant brought the motion in bad faith so as to justify the imposition of sanctions.[2] However, as a precautionary measure, we note that should defendant feel compelled to bring further motions on this issue, we will not hesitate to consider a renewed motion for sanctions at that time. An appropriate order follows.

### ORDER

AND NOW, this 4th day of August, 1994, upon consideration of defendant's motion for reconsideration of this Court's Order dated November 30, 1993, defendant's amended motion for reconsideration, defendant's combined motion to compel, and counterclaim defendant's motion for sanctions, and all responses thereto, it is hereby ORDERED that all motions shall be DENIED.

---

**2.** While Mr. Pendleton raises the issue of whether the evidence presented by defendant was newly discovered, defendant has explained the evidence came from a source other than Mr. Pendleton. Further, there is not a sufficient basis from Mr. Pendleton's exhibits for this Court to determine that the investor list relied on by defendant was the same list produced by Mr. Pendleton several months earlier. Therefore, there is no evidence defendant's motion was in bad faith.