James COLEMAN, Plaintiff,

v.

SEARS, ROEBUCK & CO., and Sears Carpet and Upholstery Care, Inc. Defendants.

No. Civ.A. 01–87J.

United States District Court, W.D. Pennsylvania.

Dec. 29, 2003.

Alexander H. Lindsay, Jr., Lindsay, Jackson & Martin, Butler, PA, Angelo A. Papa, New Castle, PA, for Plaintiff.

Mike Adams, William J. Moorhead, Jr., Cipriani & Werner, Pittsburgh, PA, Fredric A. Cohen, John Chen, Frederic A. Cohen, Catherine M. Burkhardt, Piper Rudnick, Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

GIBSON, District Judge.

This case comes before the Court for consideration of Defendants' Motion for Summary Judgment (Document No. 50) and Plaintiff's Reply in Opposition to Defendants' Motion for Summary Judgment (Document No. 56). For the following rea-

sons, Defendants' Motion for Summary Judgment is granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following: Plaintiff, James Coleman, went into the carpet cleaning business in 1973, doing business as Magic Mist. (Document No. 1, ¶ 8). In the early 1980's, Plaintiff contacted Defendants, Sears, Roebuck & Company and Sears Carpet and Upholstery Care, Incorporated (collectively "Sears") about securing a license to use the Sears name in connection with his business. *Id.* ¶ 22. Plaintiff first entered into a license agreement with Sears in October 1981. *Id.* ¶ 30. Between 1981 and 1995, the parties entered into a series of written agreements, the terms of which did not vary. *Id.* ¶ 89. There were not separate agreements between the parties for the years 1996 and 1997, but during those years the parties operated under the terms of the 1995 agreement. *Id.* ¶ 92. Finally, in 1998 the parties signed an agreement that was "identical" to their 1995 agreement. *Id.* ¶ 93. They operated under the terms of this contract until July 20, 2000. *Id.* ¶ 95.

Under the 1998 agreement, the Plaintiff was given a non-exclusive license to use certain Sears trademarks solely in connection with his carpet and upholstery cleaning business. *Id.* Exhibit A, ¶ 1. In exchange for this license, Plaintiff was required to pay Defendants a percentage of all revenue that he earned from any customers who originated from Sears. *Id.* ¶¶ 29 G & 43. This agreement was for "a period of 1 year beginning on May 1, 1998, and ending at the close of business on April 30, 1999, unless sooner terminated in accordance with the provisions of this License Agreement." *Id.* Exhibit A, ¶ 10(a). The agreement expressly stated that "[t]his Agreement contains no renew-

al rights." *Id.* The agreement further provided for termination by either party without cause by giving the other party sixty (60) days written notice. *Id.* Exhibit A, ¶ 20.

In 1997, Plaintiff heard that Defendants were considering a change in the nature of the relationship that they had with individuals like Plaintiff. Plaintiff heard that rather than sign license agreements with such individuals, Defendants were contemplating selling franchises. *Id.* ¶ 52. This rumor concerned Plaintiff because, if true, it would place Plaintiff in a bind. Either Plaintiff would have to buy a franchise from Sears, something he felt was unfair because he had already expended tremendous sums in promoting the Sears name, or Plaintiff would have to forego such a deal, thereby losing use of the Sears name, a large number of customers, and all the money that he had expended in the past. *Id.* ¶ 53. When Plaintiff approached Defendants about this rumor, a representative of Defendants told him that such a thing would "never" happen. *Id.* ¶ 55. In fact, Defendants' representative urged Plaintiff to put such fears to rest. *Id.* ¶ 56. In no uncertain terms, Plaintiff was told that he "would always be a part of the Sears group, without any change in the relation[ship], and without having to purchase or pay for anything of that sort again." *Id.* ¶ 58; see also *id.* ¶ 76.

These representations turned out to be untrue. In May 1998, Defendants established a franchise program. *Id.* ¶ 98. In February of 1999, Defendants informed Plaintiff that he was required either to buy

a Sears' franchise for $7,500.00 or else Sears would offer his territory to the public. *Id.* Under the terms of this offer, Plaintiff could continue to use the Sears name in his business, but he would lose his independence. Any non-Sears customers that Plaintiff had would become Defendants' customers. *Id.* ¶ 99 C. Additionally, Plaintiff would be forced to close his Magic Mist business completely, a business he had been operating since 1973. *Id.* ¶ B. The offer also required Plaintiff to hand over his entire customer list to Sears, *id.* ¶ 99 F, and to meet Sears' market penetration quotas. *Id.* ¶ 99 H.

Plaintiff did not accept the offer. In July 2000, Defendants notified Plaintiff that his agreement with the company had expired on April 30, 1999. *Id.* ¶ 111; Document No. 5, Exhibit 1. In this same notice, Defendants notified Plaintiff that he must wind up his dealings with Sears by September 30, 2000. (Document No. 5, Exhibit 1). Finally, Defendants told Plaintiff that they expected him to cease all use of the Sears name, its products, or its customers. *Id.*

As a result of the aforementioned actions, Plaintiff brought legal action against Defendants. Initially, Plaintiff filed a six (6) count Complaint in the Court of Common Pleas of Cambria County. Complaint ¶¶ 122–202. On August 21, 2001, the court dismissed most of the counts in Plaintiff's original complaint against Sears. (Document No. 9).[1] The only remaining claim asserted by Plaintiff was Plaintiff's claim that Defendants fraudulently misrepresen-

---

1. The court dismissed two counts alleging RICO and RICO conspiracy violations, and it dismissed those counts without prejudice to their reassertion in an amended complaint. (Document No. 9, p. 17–18). Subsequently, Plaintiff filed an Amended Complaint (Document No. 10) wherein Plaintiff filed slightly revised RICO and RICO conspiracy counts in addition to a common law fraud count. Defendants answered the fraud count but again moved to dismiss the two RICO counts. (Document No. 13). Thereafter, the court dismissed Plaintiff's RICO and RICO conspiracy counts pursuant to Federal Rule of Civil Procedure 12(b)(6). (Document No. 19).

ted to Plaintiff that they would never establish a franchise program. (Document No. 9).

Plaintiff claims that he relied, to his detriment, on the oral misrepresentations made by Defendants' representative, Mr. Witcher. (Document No. 10, ¶ 189). Plaintiff argues that Mr. Witcher personally guaranteed in no uncertain terms that Plaintiff would never be asked or required to enter into a franchise agreement with Defendants. *Id.* at ¶¶ 184, 180. Plaintiff claims that in reliance on these misrepresentations, Plaintiff invested his "time, money, and energy into the preservation and maintenance of a business relationship with the Defendant[s] to the eventual detriment of Magic Mist Carpet Cleaning, his own business." *Id.* at ¶ 189. Plaintiff's argument, at its core, is that Defendants' representations to him about a lifetime commitment and the absence of a franchise requirement were false.

Defendants refute this argument by pointing out that any statements made by Defendants concerning the nature of any continuing relationship is contradicted by the unambiguous language of the contract, and therefore, Plaintiff could not, as a matter of law, have reasonably relied on any such statements. (Document 51). Additionally, Defendants argue that Plaintiff cannot establish a prima facie case of fraud pursuant to Pennsylvania law.[2] Defendants have filed a Motion for Summary Judgment stating that Plaintiff's remaining fraud claim must be dismissed for the following reasons:

> (a) because [Plaintiff] could not as a matter of law have reasonably relied on any statement made by Sears concerning the nature of any continuing relationship due to the unambiguous lan-

guage of the parties' contract, (b) [Plaintiff's] fraud claim is barred by the 'gist of the action doctrine', and (c) Plaintiff has no evidence of fraud and cannot establish a prima facie claim of fraud.

(Document No. 50, ¶ 8).

## II. DISCUSSION

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. *Id.* In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248–49, 106 S.Ct. 2505. In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission

---

**2.** The parties agree that Pennsylvania law applies to Plaintiff's remaining claim for fraud.

(Document No. 51, fn. 3).

of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

To demonstrate entitlement to summary judgment, defendants, as the moving parties, are not required to refute the essential elements of the plaintiff's cause of action. Defendants need only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. *See id.* If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed.R.Civ.P. 56(e).

It is on this standard that the Court has reviewed Defendants' motion.

**1. Fraud**

■ The Amended Complaint asserts a fraud claim against Defendants based on fraudulent misrepresentation. The elements of a common-law claim for fraudulent misrepresentation in Pennsylvania are as follows: (1) a misrepresentation; (2) the fraudulent utterance thereof; (3) an intention by the maker that the recipient will be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the reliance. *Fort Washington Resources, Inc., v. Tannen*, 858 F.Supp. 455, 459 (E.D.Pa.1994) (citing *Browne v. Maxfield*, 663 F.Supp. 1193, 1202 (E.D.Pa.1987)).

■ The party alleging fraud has the burden of proving it by clear, precise and convincing evidence. *Browne*, 663 F.Supp. at 1202. Under *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), a summary judgment determination must be made in light of the evidentiary standard to be applied at trial. Therefore, to withstand Defendants' motion for summary judgment, there must be sufficient evidence for a reasonable jury to find for the Plaintiff, by a clear, precise and convincing standard, on each of the elements of fraudulent misrepresentation.

**a. Misrepresentation**

■ Any alleged false information may be communicated directly, or indirectly, by the non-disclosure of material facts. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1252 (1983). Additionally, the affirmation of a falsity and an innocent misrepresentation is actionable if it pertains to a matter material to the transaction involved. *Fort Washington Resources, Inc.*, 858 F.Supp. at 459.

With respect to the alleged misrepresentation about franchising, Defendants contend that promises to do future acts are not actionable to support a claim for fraud. (Document No. 51). Furthermore, Defendants claim that any statement made by

Defendants' representative, Mr. Witcher, is a statement of future events and not a misrepresentation of pre-existing or present fact. *Id.*

■ Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though the statements may turn out to be wrong. *Chatlos Systems, Inc. v. National Cash Register Corp.,* 479 F.Supp. 738, 749 (D.N.J.1979) aff'd in part, rev'd in part 635 F.2d 1081 (3d. Cir.1980); *Alexander v. CIGNA Corp.,* 991 F.Supp. 427, 436 (D.N.J.1998)(representations by company with respect to lifetime tenure for agents were insufficient to create binding obligation by company to retain agents until death or retirement); *Vaughn v. General Foods Corp.,* 797 F.2d 1403, 1411 (7th Cir. 1986) (court rejected a franchisee's efforts to sustain a claim for fraudulent non-disclosure against its franchisor, based on the latter keeping confidential its intention to divest its unprofitable Burger Chef operations, while representing that it intended to build operation into a fast food contender).

■ Generally, "non-specific statements regarding earnings and forecasts that are vague expressions of hope are not actionable." *In re Crown American Realty Trust Securities Litigation,* 1997 WL 599299, *8 (W.D.Pa.1997). A determination of whether such statements are actionable requires a case-by-case evaluation. For instance, in some cases "[c]ertain vague and general statements of optimism have been held not actionable as a matter of law because they constitute no more than 'puffery' and are understood by reasonable investors as such." *In re Burlington Coat Factory Securities Litiq.,* 114 F.3d 1410, 1428 n. 14 (3d Cir.1997) (quoted in *In re Crown American Realty Trust,*

1997 WL 599299 at *8). However, statements about optimistic future predictions may be actionable if the prediction strays from a general expression of hope and "fosters a belief in a specific and definite outcome." *In re Crown American Realty Trust,* 1997 WL 599299, at *8. In this instance, the projections, estimates or forecasts "may be actionable misrepresentations *if the speaker does not genuinely and reasonably believe them.*" *In re Donald J. Trump,* 7 F.3d 357, 368 (3d Cir.1993) (emphasis added).

■ In the case *sub judice,* the alleged fraudulent statements that Plaintiff attributes to Defendants in the Amended Complaint are replete with predictions of future events, such as the following: Plaintiff "would never be asked or required to enter into a franchise with defendant"; "Mr. Witcher personally guaranteed in no uncertain terms that this would never happen"; Defendants "falsely induced the Plaintiff to believe that he could operate a profitable and successful business under the contractual arrangement proposed by Sears"; and Defendants "falsely induced Plaintiff to believe that he would have the opportunity to increase his revenue by entering into the contractual arrangement proposed by Sears ..." (Amended Complaint, ¶¶ 180, 184, 186, 187). Undeniably, virtually all of the statements Plaintiff recounts incorporate language, such as "would" and "could," of future predictions. However, predictions of the future, even if they are believed when made, cannot serve as a basis for a fraud claim simply because the statements are not realized in the future. The issue remains though whether Defendants' representative did not genuinely and reasonably believe the alleged misrepresentations when he made them. See I.2, *infra.*

## 2. Fraudulent Utterance

Fraud is proved when it is shown that a false representation was "made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false." *Delahanty*, 318 Pa.Super. 90, 464 A.2d at 1253 (cited in *Fort Washington Resources, Inc.* 858 F.Supp. at 460).

Plaintiff argues that Defendants' representative, Mr. Witcher, inquired of Plaintiff whether, if given the choice, he would choose either Sears or Magic Mist, and that such inquiry is inescapably evidence that Mr. Witcher knew his superiors were contemplating implementing a franchise system. (Coleman Deposition, p. 41, II. 9–13).

The Court determines that this single inquiry does not provide clear and convincing evidence that Mr. Witcher intended, at the time the alleged misrepresentations were made, to fraudulently misrepresent to Plaintiff Defendants' future operating plans. In fact, absent any deposition testimony of Mr. Witcher's purported knowledge about Defendants' future operations, which is lacking in the record, Plaintiff fails to provide any precise evidence to support this element of the fraud claim.

## 3. Intent to Induce Plaintiff

The Court reaches a conclusion similar to that reached with regard to fraudulent utterance with respect to whether any alleged misrepresentations were made with the intent to induce Plaintiff to act.

Plaintiff alleges that Defendants' statements regarding franchising were made on more than one occasion, and therefore, were made in order to make Plaintiff believe that the licensing agreement could continue indefinitely. (Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, p. 8). The Court, mindful that in a motion for summary judgment the non-moving party is entitled to all reasonable inferences to be drawn from the facts of the record, determines that Plaintiff has not provided clear and convincing evidence that these statements, when made, were made with the intent to induce Plaintiff to act in some manner. In fact, Plaintiff was under an existing license agreement, under which he was obligated to continue doing business with Defendants as he always had in the past. Thus, Plaintiff was not induced to act in any way that caused detrimental effects to his existing contract with Defendants.

## 4. Justifiable Reliance

Whether reliance on an alleged misrepresentation is justified depends on whether the recipient knew or should have known that the information supplied was false. *Scaife Co. v. Rockwell–Standard Corp.*, 446 Pa. 280, 285 A.2d 451 (1971) (citing *Emery v. Third National Bank*, 308 Pa. 504, 162 A. 281 (1932)). If both parties do not have equal access to information in question, then the representations of the person believed to possess superior information may be relied upon. *Fort Washington Resources, Inc.*, 858 F.Supp. at 460. Furthermore, in determining whether the recipient justifiably relied upon information, a court may consider the degree of sophistication of the parties and the history of the negotiation process between them. *Id.*

As the Court opined in its Order dated August 21, 2001, the Plaintiff could not, as a matter of law, have reasonably relied on any statements made by Defendants concerning the possibility of establishing a franchise program if discovery reveals that the existing license agreements did not provide for future business relations between the parties. In other

words, if the existing license agreement indicated that there might not be any relationship at all between the parties in the future, then what basis would Plaintiff have to rely on contrary statements concerning the nature of the relationship.

Section 10 of the license agreement between the parties states that the "term of this License Agreement shall be for a period of 1 year . . . , unless sooner terminated. . . . This Agreement contains no renewal rights." Complaint, Ex. A ¶ 10. Section 19 of the agreement contains detailed language about when the Defendants can terminate the agreement for cause. *Id.* ¶ 19. Furthermore, Section 20 provides that either party had the right to terminate even without cause by giving the other party sixty (60) days written notice. *Id.* ¶ 20. Thus, the parties, in anticipation of potential changes in their business relationship, acknowledged and signed a licensing agreement that permitted the termination of that relationship.

It is difficult for this Court to reconcile how an experienced business person, such as the Plaintiff, could justifiably rely upon oral assurances that the existing business relationship would not change, when the licensing agreement provided for that possible, yet uncertain, event. See *Alexander v. CIGNA Corp.*, 991 F.Supp. 427, 436 (D.N.J.1998); see also *Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc.* 831 F.Supp. 920, 924 (D.Mass.1993) (fraud claim rejected where precise terms of contract prevented reasonable reliance on prior oral statements). Although nothing in the agreement specifically warned Plaintiff not to rely on Defendants' representative's statements that they never intended to create a franchisor/franchisee relationship, Plaintiff has not provided clear and convincing evidence in the record that Plaintiff justifiably relied upon Defendants' alleged misrepresentation.

### 5. Damages

"The victim of a misrepresentation is entitled to pecuniary losses which result from his reliance on the misrepresentations." *Fort Washington Resources, Inc.*, 858 F.Supp. at 461.

In the case *sub judice*, Plaintiff alleges that he suffered loss as a result of investing his money, energy, and time for nineteen (19) years into a business under the alleged misrepresentation that it would never evolve into a franchise relationship. (Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 11).

The Court determines that any alleged damages suffered by Plaintiff are the consequence of the inability of the parties to amicably reach an agreement under the Defendants' newly implemented franchise program. The existing license agreement expired under its natural terms, and Defendants offered Plaintiff a new franchise agreement at a reduced cost since Plaintiff had maintained a business relationship with Defendants for years. However, Plaintiff decided not to re-enter into a business arrangement with Defendants. Plaintiff has failed to show with clear, precise, and convincing evidence how the alleged misrepresentations proximately caused damages to the Plaintiff.

In conclusion, the Court finds that Plaintiff has not met his burden in identifying affirmative evidence of record that supports each essential element of his cause of action. Moreover, Plaintiff has not offered specific evidence found in the record that contradicts the evidence presented by the Defendants and indicates that there remains any relevant factual disputes that must be resolved at trial. Therefore, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's fraud

claim.[3]

## *ORDER*

**AND NOW**, this 29th day of December, 2003, in consideration of Defendants' Motion for Summary Judgment and Plaintiff's Response in Opposition of Defendants' Motion for Summary Judgment, **IT IS HEREBY ORDERED** that the aforesaid Motion for Summary Judgment is GRANTED. Plaintiff's Complaint is dismissed in its entirety with prejudice. The Clerk of Courts is hereby directed to enter judgment in favor of Defendants and against Plaintiff.

---

**3.** In finding that Plaintiff has not met his burden in proving the elements for a claim of fraud, the Court determines that any further discussion of Defendants' assertion that Plaintiff's fraud claim is barred by the "Gist of the Action" Doctrine is moot.