**GRACE HOLDINGS, L.P., an Illinois Limited Partnership, Plaintiff,**

v.

**SUNSHINE MINING AND REFINING COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 95–38 MMS.**

United States District Court, D. Delaware.

Sept. 19, 1995.

[black box]

---

Josy W. Ingersoll, Esq., of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; Of Counsel: Scott E. Early, Esq., of Foley & Lardner, Chicago, Illinois; for plaintiff.

Samuel A. Nolen, Esq., Daniel A. Dreisbach, Esq., Todd C. Schlitz, Esq., and Catherine G. Wagner, of Richards, Layton & Finger, Wilmington, Delaware; Of Counsel: Evans, Keane, Boise, Idaho; for defendant.

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiff Grace Holdings, L.P. ("Grace Holdings") has filed a complaint against defendant Sunshine Mining and Refining Company ("Sunshine") alleging breach of an agreement, titled "Certificate of Designation, Rights and Preferences of the $11.94 Cumulative Redeemable Preferred Stock," under which Grace Holdings retains over 800,000 shares of Sunshine Preferred Stock. Before the Court is Grace Holdings' motion for leave to file an Amended Complaint. In its proposed amendment, Grace Holdings seeks a declaratory judgment "that Sunshine must redeem the Preferred Stock and pay all then earned but unpaid dividends on or before July [3]1, 2000." Docket Item ("D.I.") 11 at p. 6–7. Defendant Sunshine opposes Grace Holdings' motion, arguing that Article III, Section 2 of the United States Constitution does not empower this Court to entertain the proposed amendment. After full briefing by both parties, the Court held argument on May 26, 1995. For the reasons that follow, the Court will deny Grace Holdings' motion to amend.

## I. BACKGROUND

Grace Holdings, L.P. is an Illinois partnership with its principal place of business in Chicago, Illinois. D.I. 1 at ¶ 1. Grace Holdings purports to own approximately 11 percent of the outstanding shares of $11.94 Cumulative Redeemable Preferred Stock ("Preferred Stock") issued by Sunshine. *Id.* Sunshine is a Delaware corporation with its principal place of business in Boise, Idaho. *Id.* at ¶ 2. Sunshine, through its subsidiaries, mines, refines, and markets silver, as well as limited quantities of gold, copper, and antimony. D.I. 13, Exhibit ("Exh.") A (Sunshine Mining & Refining Company 1994 SEC Form 10–K).

The Certificate of Designation, Rights and Preferences of the $11.94 Cumulative Redeemable Preferred Stock ("Certificate") governs the correlative rights and duties between Grace Holdings, as shareholder, and Sunshine as issuer of Preferred Stock. The Certificate provides that if and when a dividend is declared by Sunshine, holders of the Preferred Stock are entitled to a cumulative annual dividend of the stated value of the Preferred Stock. Paragraph (d) of the Certificate further states that:

> No Dividends or other distributions other than dividends payable solely in shares of Common Stock or other capital stock of the Corporation ranking junior as to dividends of the Preferred Stock (the "Junior Dividend Stock"), shall be paid or set apart for payment on, and no purchase, redemption or other acquisition shall be made of, and shares of Common Stock or Junior Dividend Stock unless and until all accrued and unpaid dividends on the Preferred Stock shall have been declared and paid or a sum sufficient for payment thereof set apart.

D.I. 1, Exh. A at ¶ (d). Finally, paragraph (f)(ii) provides for annual redemption of a number of shares equal to 10 percent of the aggregate number of shares of Preferred Stock issued beginning in the sixth year after its issuance in 1985, "with all of the shares of the Preferred Stock to be redeemed by the Corporation on or before the fifteenth anniversary of the Issue Date." The fifteenth

anniversary of the issue date is July 31, 2000. D.I. 11 at ¶¶ 4, 15.

Between December, 1990 and the present, Sunshine has apparently neither declared a dividend on the Preferred Stock nor redeemed any of those shares. Convinced that these actions constituted a breach of fiduciary duty, certain Preferred Stockholders filed a class action suit against Sunshine and several of its directors in the Delaware Court of Chancery.[1] *See Giammalvo v. Sunshine Mining Co.,* C.A. No. 12482, 1994 WL 30547 (Del.Ch. Jan. 31, 1994), *aff'd,* 651 A.2d 787 (Del.1994). The shareholders argued, among other things, that the Certificate of Designation required Sunshine to pay all outstanding dividend arrearages and thereafter redeem the Preferred Stock as per paragraph (f)(ii) of the Certificate. The Court of Chancery disagreed and held that the Certificate of Designation did not require Sunshine to redeem any Preferred Stock while accrued but unpaid dividends existed. *Giammalvo v. Sunshine Mining Co.,* 1994 WL 30547 at *5.

Subsequent to the Chancery Court decision, Sunshine issued a prospectus relating to the distribution of transferable subscription rights to holders of record of Sunshine's Common Stock. D.I. 1 at ¶ 8. Grace Holdings believes these transferable subscription rights constituted a distribution or dividend by Sunshine that violated paragraph (d) of the Certificate of Designation. D.I. 1 at ¶ 12–13. These transferrable subscription rights are the subject of Count I of Grace Holdings' complaint and are not at issue in Grace Holdings' motion to amend.

The motion to amend relates to conduct occurring subsequent to the filing of Grace Holdings' original complaint. By letter dated March 15, 1995, Grace asked Sunshine to "advise us no later than the close of business on March 25, 1995, whether or not Sunshine Mining Company intends to effect [the July 31, 2000] redemption, regardless of whether accrued dividends have been paid." D.I. 13,

Exh. B. Sunshine did not reply directly, but when Sunshine filed its 1994 SEC Form 10–K on March 21, 1995, it addressed the issue in the notes to the Financial Statement:

> The Company has not made any mandatory redemption payments either in cash or in shares of common stock because the terms of the Preferred Stock do not permit such mandatory redemption if any dividends are in arrears.... *The Company takes no position as to whether dividend arrearages at July 31, 2000 would also prohibit the redemption of the Preferred Stock.*

D.I. 13, Exh. A at F–18 (emphasis added). Based on the italicized statement, Grace Holdings proposes to amend its complaint to add a second count, alleging "[t]here is a presently existing actual controversy between the parties as to whether Sunshine must redeem the Preferred Stock on or before July [3]1, 2000," D.I. 11 at ¶ 20, and, therefore, demanding "a Declaration that Sunshine must redeem the Preferred Stock and pay all then accrued but unpaid dividends on or before July [3]1, 2000," *id.* at 6–7. Sunshine opposes Grace Holdings' motion on the grounds that it does not state a justiciable cause of action. D.I. 12 at 1.

As recognized by Grace Holdings, whether or not the proposed cause of action is justiciable turns on three key facts. First, the only harm asserted by Grace Holdings is a "current impact on the market value of the Preferred Stock." D.I. 11 at ¶ 20; *see also* D.I. 19 at 1 (asserting a present diminution of value of the Preferred Stock).[2] Second, Grace Holdings has not alleged a present violation of the redemption provisions of the Certificate of Designation for the Preferred Stock or a present statement of intent by Sunshine to take an action that may violate the Certificate of Designation. Instead, Grace Holdings relies solely on the Sunshine's 10–K statement to demonstrate a

---

1. Grace Holdings was not a party to the state court action.

2. At oral argument, Grace Holdings asserted a slightly different present injury, a "cloud on the

ultimate obligation to redeem," of which the present stock price is but one indication. Under either characterization of present injury, the Court's holding, as will become apparent, would not differ.

present harm. *Id.*[3] Third, and most important, Grace Holdings' proposed cause of action asks the Court to construe a Certificate of Designation that has not been breached, and on the facts alleged, cannot be breached until five years have passed. In essence, Grace Holdings wants this Court to declare the legal meaning of a contract prior to the time for performance so that Grace Holdings may discern the present value of the contract to a greater level of certainty.

## II. ANALYSIS

### A. Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a) states that "a party may amend [its] pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The United States Supreme Court has emphasized that leave to amend should, as the rule states, be "freely given," and that failure to grant leave to amend is an abuse of discretion absent "any apparent or declared reason—such as ... futility of amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Federal Deposit Ins. Corp. v. Bathgate,* 27 F.3d 850, 874 (3d Cir.1994) ("The futility of amendment is one of the factors that a trial court may consider in denying a motion to amend."); *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993) ("In the absence of substantial or undue prejudice, denial instead must be based on ... futility of amendment.") (citations omitted).

In the present case, Sunshine argues that the Court should deny Grace Holdings' motion to amend because the case or controversy requirement of Article III of the United States Constitution does not empower the Court to adjudicate the proposed amendment. Specifically, Sunshine argues that the proposed amendment states a non-justiciable controversy which, if amendment were permitted, the Court would inevitably dismiss for want of subject matter jurisdiction. Because Sunshine's objection touches upon the power of the Court entertain the cause of action that would result from the proposed amendment, the Court will evaluate Grace Holdings' motion to amend in the context of deciding whether the proposed cause of action presents a justiciable case or controversy.

### B. Justiciability

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides statutory authority for the federal courts to make prospective declarations regarding "the rights and other legal relations of any interested party seeking such declaration."[4] The Act is a procedural, not a jurisdictional, statute, *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *cf.,* Fed.R.Civ.P. 57. For a court to have jurisdiction over a declaratory judgment action, the court must possess the requisite constitutional power and statutory authority, *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950); *Terra Nova Ins. Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1218 n. 2 (3d Cir.1989). Thus, the Act provides an "added anodyne for disputes that come within the federal courts' jurisdiction on some other basis."[5] *Ernst &*

---

**3.** When addressing questions of constitutional power to hear a case, the Court may refer to material in the record beyond the pleadings if necessary to determine whether jurisdiction exists. *Bell Atl. Corp. v. MFS Communications Co.,* 901 F.Supp. 835, 842 (D.Del.1995) (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947)); *International Assoc. of Machinists & Aerospace Workers v. Northwest Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir.1982).

**4.** 28 U.S.C. § 2201(a) states:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**5.** In this case, Grace Holdings alleges that the Court has statutory authority to hear the case pursuant to 28 U.S.C. § 1332(a)(1) because Grace Holdings and Sunshine are citizens of different states and the amount in controversy exceeds $ 50,000. Defendant's opposition to the motion to amend does not challenge plaintiff's allegations in this regard.

*Young v. Depositors Economic Protection Corp.,* 45 F.3d 530, 534 (1st Cir.1995) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 15–16, 103 S.Ct. 2841, 2849–50, 77 L.Ed.2d 420 (1983)).

■ Article III, Section 2 of the United States Constitution empowers federal courts to adjudicate only matters that present a case or controversy, *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir.1994); this case or controversy requirement must be satisfied regardless of the kind of relief sought, including declaratory relief.[6] *Armstrong World Indus. v. Adams,* 961 F.2d 405, 410 (3d Cir.1992).

■ In discussing this case or controversy requirement in the context of the Declaratory Judgment Act, the United States Supreme Court has observed,

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937) (citations omitted). The difference between an abstract issue and a "controversy" contemplated by the Declaratory Judgment Act is one of degree; the question in each lawsuit reduces to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ In a declaratory judgment action, the power of the federal courts to entertain disputes *vis-a-vis* the proscription against the issuance of advisory opinions implicates several justiciability doctrines, one of which is ripeness. Concerns of ripeness prevent courts from prematurely adjudicating abstract disagreements; ripeness is in essence, a question of timing. *Presbytery of New Jersey,* 40 F.3d at 1462; *see* Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1 at 113 (2d ed. 1994) ("Ripeness ... is a justiciability doctrine determining *when* review is appropriate."). Where ripeness questions have been raised, the party seeking the declaratory judgment carries the burden of demonstrating that the case is justiciable. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* —— U.S. ——, ——, 113 S.Ct. 1967, 1974, 124 L.Ed.2d 1 (1993) (citing *Aetna Life Ins. Co.,* 300 U.S. at 240–41, 57 S.Ct. at 463–64).

■ At the heart of the ripeness doctrine is the consideration that courts should not adjudicate "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prod. Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985). Consequently, in a seminal declaratory judgment opinion, the Supreme Court has postulated that ripeness implicates two primary considerations, "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The Court of Appeals for the Third Circuit has further "refined this test because of the difficulty in defining ripeness before an 'accomplished' injury is established." *Armstrong World Indus. v. Adams,* 961 F.2d 405, 411 (3d Cir.1992). Under Third Circuit precedent, the ripeness of a declaratory judgment action hinges upon three analytical prongs: (1) "the adversity of

---

**6.** In concert with Article III, the Declaratory Judgment Act requires "a case of actual controversy." This requirement is coextensive with the justiciability requirements imposed by Article III. *See, e.g., Aetna Life Ins. Co. v. Haworth,* 300 U.S. at 239–40, 57 S.Ct. at 463–64; *Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 166 (3d Cir. 1982) (citing *Cutaiar v. Marshall,* 590 F.2d 523,

527 (3d Cir.1979)); *ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 666 F.2d 819, 822 (3d Cir.1981) ("A federal court's authority to grant declaratory relief ... extends to the article III limits on the court's power to adjudicate disputes.") (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. at 239–40, 57 S.Ct. at 463–64).

the interest of the parties, (2) the conclusiveness of the judicial judgment, and (3) the practical help, or utility, of that judgment." *Id.* (citing *Step–Saver Data Sys., Inc. v. Wyse Technology,* 912 F.2d 643, 647 (3d Cir. 1990)); *see also Presbytery of New Jersey,* 40 F.3d at 1463.

### 1. Adversity of Interest between the Parties?

■ In some situations, a litigant need not suffer a fully completed harm and "await the consummation of threatened injury to obtain preventive relief." *See, e.g., Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752 (1983) (challenge to the constitutionality of moratorium on the certification of new nuclear facilities justiciable without plaintiff utilities risking capital by constructing actual facility). A plaintiff may also allege that it is suffering present harm flowing from the threat of future action. *Armstrong World Indus.,* 961 F.2d at 412. However, in seeking judicial prophylaxis for such present harm, a plaintiff must still "demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (citations omitted).

In its proposed amendment to the complaint, Grace Holdings prays for declaratory relief based on the assertion in Sunshine's Form 10–K that Sunshine "takes no position" as to whether dividend arrearages at July 31, 2000 would also prohibit Sunshine's redemption of Grace Holdings' Preferred Stock at that future date. Grace Holdings alleges that as a result of Sunshine's statement, it suffers present harm: a cloud on what Grace Holdings perceives to be its future right to redeem the Sunshine preferred stock as of July 31, 2000, a date five years hence. Grace Holdings perceives Sunshine's taking no position on the stock's redeemability as creating "immediate and substantial uncertainty" as to the "legal risk that [Sunshine] would use its failure to pay dividends as an excuse not to redeem the preferred stock" in the year 2000. D.I. 19 at 3–4.

As authority for its position, Grace Holdings offers the case of *Pembroke Tel. Co. v. Wireless Communications Co.,* C.V. 491–396, 1992 WL 138388 (S.D.Ga. June 3, 1992). In that case, the Pembroke Telephone Company and the Wireless Communication Company entered into a contract in 1984 to form a new corporation, Pembroke Cellular, that would operate a wireless cellular system in Savannah, Georgia. *Id.* at *1. Two years later, the Federal Communications Commission authorized the formation of a consortium of cellular telephone companies, in which Pembroke Cellular had a 20 percent interest. *Id.* Around that same time, in 1986, Pembroke Telephone alleged that Wireless Communication failed to perform its obligation under their original contract and unilaterally terminated that agreement. *Id.* Wireless acquiesced in the termination and did not assert any right to an interest in Pembroke Cellular. *Id.*

Five years later, Pembroke Telephone attempted to sell its interest in Pembroke Cellular. Before allowing consummation of the sale, Pembroke Cellular requested formal renunciation of any interest in Pembroke Cellular by Wireless Communication. *Id.* Through counsel, Wireless Communication orally abdicated its interest in Pembroke Cellular, but refused to sign any written acknowledgment and termination to that effect. *Id.* Wireless Communication later admitted that its refusal to renounce its interest in writing was based on a fear of retaliatory litigation from one of its 40 percent shareholders. *Id.* at *4. Pembroke Telephone consequently filed an action in federal court seeking a declaratory judgment that Wireless Communication had no legal or equitable interest in Pembroke Cellular. *Id.* at *2.

Wireless Communication argued that the lawsuit presented no justiciable case or controversy because at most, its refusal to renounce any interest in Pembroke Cellular indicated that the rights and obligations between a 40 percent shareholder and Wireless were unsettled, as were possibly the rights and duties, if any, of the shareholder and Pembroke Telephone. *Id.* at *4. The Court, however, found that central to the

lawsuit was the issue of whether the allegation of default and unilateral termination of the original agreement by Pembroke Telephone divested Wireless Communication of its interest in Pembroke Cellular. *Id.* at * 5. Because Wireless had not transferred, assigned, or disclaimed any interest in Pembroke Cellular, the court found an actual controversy in that Pembroke Telephone could not sell its interest in Pembroke Cellular. *Id.*

Grace Holdings contends that *Pembroke* is relevant because the court invalidated defendant's attempt to take no position on the issue of whether it renounced its interest in Pembroke Cellular. In *Pembroke,* Grace Holdings argues, the defendant's refusal to take a position, in effect, amounted to the defendant's taking an adverse position, thus creating the requisite adversity. However, the factual context of the controversy in *Pembroke* differs sharply from the instant facts. In *Pembroke,* the defendant had already allegedly breached an agreement between the parties, causing the plaintiff to unilaterally assert termination of the contract. These past differences had never been fully settled, and the defendant tried to remain noncommittal regarding the ramifications of its alleged prior breach. The court found that the previous disagreement, and more significantly, the legal consequences flowing therefrom, formed the core of the pending declaratory suit.

Unlike *Pembroke,* in the case *sub judice,* there is no prior broken obligation by Sunshine that propels Grace Holdings into court. Instead, there is merely a contractual provision describing a future due date for performance by Sunshine. On the present facts, Grace Holdings concedes that the ultimate harm of breach does not accrue until the year 2000. *See* D.I. 27 at 28 (Transcript, Hearing on the Motion to Amend). Grace Holdings also concedes that it has no colorable facts to allege anticipatory breach by Sunshine, *i.e.,* Sunshine has done nothing to imply that it does not intend to fulfill its obligation under the contract when the time for performance comes due. *Id.* at 27–28.

What Grace Holdings does assert is that Sunshine's Form 10–K assertion of 'no position' is tantamount to asserting an adverse position, and that Sunshine's statement has generated present uncertainty as to Sunshine's future redemption of the preferred shares in the face of dividend arrearages, if any. Grace Holdings has not offered any reasons why Sunshine's statement could not be taken at face value, *i.e.,* that Sunshine is simply declining to speculate as to the interpretation of contract terms if certain events occur or fail to occur. *Compare Step–Saver,* 912 F.2d at 648 (whether defendant has been called upon to deny or admit liability is not the point, rather, the issue is whether defendant has in fact denied liability). Other than Sunshine's stated position of neutrality, Grace Holdings does not allege any affirmative statements, threats, or other indicia that Sunshine does not intend to redeem the preferred shares by July 31, 2000. Without some form of overt conduct on the part of Sunshine, *see id.,* Grace Holdings has not demonstrated that the probability of the future event it wishes the Court to adjudicate, the failure to redeem, "is real and substantial, of sufficient immediacy and reality." *See Armstrong World Indus.,* 961 F.2d at 412; *Salvation Army v. Department of Community Affairs,* 919 F.2d 183, 192 (3d Cir. 1990). Viewed under this standard, Grace Holdings' failure to demonstrate any likelihood of Sunshine's violation of the Certificate of Designation leads to the inevitable conclusion that Grace Holdings is proposing the Court issue a pre-breach legal opinion as to the meaning of the Certificate's redemption provision. This the Court cannot constitutionally do.

In addition, Grace Holdings' proposed amended complaint petitions the Court to adjudicate the meaning of the Certificate's provision under a hypothetical set of facts. Sunshine's 10–K statement was couched in terms of "*whether* dividend arrearages at July 31, 2000 would also prohibit the redemption of the Preferred Stock." D.I. 11 at ¶ 19 (emphasis supplied). There is no allegation by Grace Holdings that there will in fact be any dividend arrearages at that time; in reality, Grace Holdings asks for resolution of a question that is contingent upon the existence of dividend arrearages in the year

2000. Even more fundamentally, there is no certainty whether the Preferred Stock will even be outstanding on July 31, 2000; the Certificate of Designation allows Sunshine to "redeem the Preferred Stock in whole or in part at any time or from time to time." D.I. 1, Exh. A at ¶ (f)(i). Because of the inherent contingency in Sunshine's statement, once again, Grace Holdings fails to demonstrate that these facts are "real and substantial, of sufficient immediacy and reality."

Grace Holdings maintains, nonetheless, that it is being presently injured as a result of Sunshine's 10–K statement, emphasizing that there is a cloud on the redemptive right of the Preferred Stock: "We do not know what kind of security we own." D.I. 27 at 29. In support of its argument, Grace Holdings cites a series of cases for the general proposition that "a *current* effect ... is sufficient to make ... [a] claim ripe for judicial determination." D.I. 19 at 5–6; *see Crow Tribe of Indians v. Montana*, 819 F.2d 895, 903 (9th Cir.1987) (state tax law impeded plaintiffs' ability to sell coal), *aff'd*, 484 U.S. 997, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988); *Meadows of W. Memphis v. City of W. Memphis*, 800 F.2d 212, 214–15 (8th Cir.1986) (city council's resolution prevented plaintiffs from obtaining financing and caused costly delay); *Bob's Home Serv., Inc. v. Warren County*, 755 F.2d 625, 627–29 (8th Cir.1985) (adoption of county plan reduced the present value of plaintiff's land); *McCoy–Elkhorn Coal Corp. v. United States EPA*, 622 F.2d 260, 264–65 (6th Cir. 1980) (passage of federal Clean Air Act caused constriction in market for coal affecting plaintiff's business activities); *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 657 n. 1 (9th Cir.1975) (zoning ordinance reduced marketability of plaintiff's land), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977).

While these cases do stand for this proposition, the common context underlying each of these authorities is one not shared by Grace Holdings' proposed cause of action. In each of the cited cases, the declaratory judgment plaintiffs asserted a present harm from impending government enforcement of a statute or regulation. In each of these cases, the governmental authority had taken a position and committed itself to a defined, not hypothetical posture; the threat of enforcement was imminent. In other words, the government's stated position directly caused "a real and substantial probability" of present harm so as to present a justiciable controversy under Article III. *Cf. Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

Unlike the cited cases, there is no such direct nexus: because Sunshine has not taken a position, Grace Holdings' fears are currently speculative and based on a projected worst case scenario. *Cf. Ernst & Young v. Depositors*, 45 F.3d at 538 (1st Cir.1995) ("present fears are often less than horrible imaginings") (quoting William Shakespeare, *Macbeth*, act I, sc. iii (1605)). This speculation is borne out in the affidavit of Sheldon M. Pekin, a securities consultant, offered on behalf of Grace Holdings. D.I. 19. In Pekin's opinion, Sunshine's 10–K statement "*will have* a negative affect [sic] on the value of the preferred stock." D.I. 19 at ¶ 3 (emphasis supplied). He posits that a "security with no defined maturity takes on much greater risk.... [and] *if* Sunshine fails to redeem the preferred stock until the year 2010, the theoretical value of the preferred stock would drop over 50%." *Id.* (emphasis supplied). Upon scrutiny, Pekin's sworn statements do not aid Grace Holdings in its argument for current harm. His opinions, like Grace Holdings' argument, speak in terms of future events that may or may not come to pass, not current harm.

Finally, Grace Holdings' contention that a cloud on the redemptive right of the Preferred Stock warrants federal subject matter jurisdiction is simply without merit. In essence, Grace Holdings is an investor perplexed by the *Giammalvo* court's adjudication of a redemption feature in the Preferred Stock's Certificate of Designation. *See Giammalvo v. Sunshine Mining Co.*, C.A. No. 12482, 1994 WL 30547 (Del.Ch. Jan. 31, 1994), *aff'd*, 651 A.2d 787 (Del.1994). Any cloud of uncertainty, assuming there is one, had its real genesis in the aftermath of the *Giammalvo* decision, which held that Sunshine need not effect annual redemptions of the Preferred Stock because there were ac-

crued and unpaid dividends. Feeling understandably uneasy as to the meaning of other redemption provisions in the Certificate, Grace Holdings asked Sunshine if it "intends to effect" the redemption provision on July 31, 2000, "regardless of whether accrued dividends have been paid." D.I. 13, Exh. B (letter of March 15, 1995). Sunshine declined to take any position on the issue, and publicly stated as much in its 10–K SEC filing and annual report. At best, Grace can only argue that Sunshine's taking no position fails to quell any uncertainty Grace already had. Absent any overt, contrary action on the part of Sunshine, this Court has nothing to adjudicate. The Court holds that Grace has failed to demonstrate that Sunshine will refuse to effect a July 31, 2000 redemption of the Preferred Stock as a real and substantial probability, of sufficient immediacy and reality. Accordingly, the requisite adversity of interest between the parties is lacking.

## 2. Conclusivity

 In addition to adversity of interest between the parties, a lawsuit "must be based on a real and substantial controversy admitting of specific relief through a decree of a *conclusive* character...." *Armstrong World Indus.*, 961 F.2d at 412 (citations omitted). This second of the *Step–Saver* factors requires the Court to evaluate whether judicial intervention at this time would amount to more than a mere advisory opinion based upon a hypothetical set of facts. *Presbytery of New Jersey,* 40 F.3d at 1468. The declaratory judgment decree should thus be sufficiently conclusive to clarify and define the legal relationship between the parties. *Step–Saver,* 912 F.2d at 648. Absent a set of concrete facts, a declaratory judgment itself would be a contingency, and application of the judgment to actual controversies that arise later would be an "exercise in futility." *Armstrong World Indus.,* 961 F.2d at 412.

One sound method of gauging conclusivity is by evaluating whether the Court is in a position to grant effective relief to the plaintiff. *Step–Saver,* 912 F.2d at 649; *see also Salvation Army,* 919 F.2d at 193. Grace petitions this Court for a "Declaration that Sunshine must redeem the Preferred Stock

and pay all then accrued but unpaid dividends on or before July [3]1, 2000." D.I. 11 at 6–7. The Court lacks the prescience to discern, however, whether in fact there will be any accrued but unpaid dividends on that date; no one knows if this circumstance is certain to occur. *Step Saver,* 912 F.2d at 649 n. 7. Additionally, over the next five years, any number of other events could transpire that would nullify any prospective court order. For example, under the Certificate of Designation, Sunshine could redeem the outstanding shares of Preferred Stock; or, Grace may sell its Preferred Stock on the open market. July 31, 2000 is the earliest date that a court could order relief; any judgment entered now would not impact the legal status of the parties until that future date. Because of the contingent nature of presently-ordered relief, the judgment itself would be nothing more than a mere contingency, resolving issues arising only if the facts unfold as Grace anticipates, resolving nothing if the facts do not.

By its nature, a declaratory judgment will almost invariably have some conclusive effect. *Armstrong World Indus.,* 961 F.2d at 423. However, a modicum of conclusivity does not make up for the contingent nature of plaintiff's proposed complaint. Because the adjudication would be contingent on unknowable future events, the Court will not address Grace Holdings' hypothetical question. *Id.* at 423. The Court therefore holds that plaintiff's amended complaint falls short of fulfilling the conclusivity requirement under *Step–Saver* and its progeny.

## 3. Utility

 Finally, the Court must consider whether a judgment rendered today would have utility and be of practical help to the parties. *Step–Saver,* 912 F.2d at 649. This requirement is concerned with the hardship to the parties that would result from the Court's refusal to consider granting relief. *See Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515; *Rhode Island v. Narragansett Indian Tribe,* 19 F.3d 685, 693 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994); *Armstrong World Indus.,* 961 F.2d at 411. This requirement also

enables the court under the Declaratory Judgment Act to clarify legal relationships so that the parties could engage in responsible decisionmaking about the future. *Step–Saver*, 912 F.2d at 649.

Here, the Court is faced with an investor, Grace, who is not unsophisticated, who contracted for preferred stock securities involving a variety of redemption provisions. From the sidelines, this investor witnessed a state court's unfavorable adjudication of another redemption feature in the contract. Now the investor desires to know how a future redemptive process will take place with respect to a risk the investor perhaps did not previously contemplate: that is, the risk that there will be accrued, unpaid dividends on July 31, 2000.

Although Grace styled its proposed complaint as a contract dispute, there is presently no dispute on Sunshine's part; it has simply declined to speculate about the future. In actuality, Grace has petitioned the Court for investment advice as to the risk of holding versus selling its shares of Sunshine Preferred Stock in the current silver market in light of the *Giammalvo* decision. From Grace's perspective, there would be much investment utility in this Court's fixing the odds of Grace's future investment uncertainty. This, however, is not the type of utility contemplated by the Declaratory Judgment Act, and raises concerns about the constitutional power and appropriate role of the federal courts.

## III. CONCLUSION

Because Grace Holdings has failed to demonstrate ripeness of the issue presented in their proposed amended complaint, the Court holds that the proposed amendment presents no justiciable controversy. The Court will therefore deny plaintiff's motion to amend its complaint.